# United States District Court
# Central District of California

*In re Trader Joe's Tuna Litigation* | Case No. 2:16-cv-01371-ODW(AJWx)

**ORDER GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS CASE [62]**

## I.    INTRODUCTION

Defendants Trader Joe's Company and Trader Joe's East Inc. (collectively, "Trader Joe's") move to dismiss Plaintiffs' Second Amended Complaint ("SAC") on several bases.  (ECF No. 55.)  On June 2, 2017, the Court granted Trader Joe's Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"), with leave to amend.  (ECF No. 54.)   For the reasons discussed below, the Court **GRANTS, IN PART,** and **DENIES, IN PART,** Trader Joe's Motion.

## II.    FACTUAL BACKGROUND

Plaintiffs allege a consumer class action relating to Trader Joe's allegedly illegal and deceptive practices of under filling cans of tuna, despite consumers' expectations that the cans would contain an "adequate amount."  (SAC ¶¶ 1, 12–13, ECF No. 55.) Plaintiff Sarah Magier is a citizen of New York who purchased Trader Joe's Albacore

Tuna in Water No Salt Added in New York, through the end of 2013, and wishes to represent a subclass of all class members who purchased Trader Joe's tuna in New York. (*Id.* ¶¶ 12, 20.) Plaintiff Atzimba Reyes is a citizen of California, and purchased 5-ounce canned Trader Joe's Albacore Tuna in Water Salt Added. (*Id.* ¶ 13.) Reyes wishes to represent a subclass of all Californians who purchased Trader Joe's tuna. (*Id.* ¶ 21.)

As described in detail in the Court's prior order, (ECF No. 54), Plaintiffs determined that the Trader Joe's tuna cans were underfilled and underweight by commissioning testing with the U.S. National Oceanic and Atmospheric Administration ("NOAA") on December 1, 2015. (*See* SAC ¶¶ 2–7.) NOAA conducted this testing by evaluating the pressed cake weight ("Pressed Weight Standard"). *See* 21 C.F.R. § 161.190(c). The Pressed Weight Standard is measured by using a complex process requiring specific machinery, and was promulgated by the FDA in 1957. *Id.*; (Mot. 3.) The NOAA tests based on this method determined that several varieties of Trader Joe's tuna fell 19.2%, 24.8%, 24.8%, 11.1%, 9.9%, and 13.9% below the Pressed Weight Standard. (*See* SAC ¶¶ 2–7.)

Trader Joe's canned tuna labels do not contain any statements regarding the "pressed weight," but do contain representations as to the "net weight" (5 oz.), and the "drained weight" (4 oz.).[1] (Defendants' Request for Judicial Notice ("RJN"), Ex. 1, ECF Nos. 62-2, 62-4.) NOAA also tested the "net weight" and the "drained weight" of the tuna. (RJN, Ex. 2, ECF Nos. 62-2, 62-5.) Trader Joe's contends that, according to the NOAA tests, neither the average "net weight" nor average "drained weight" ever tested below 5 oz. or 4 oz., respectively. (Mot. 3.) Plaintiffs do not dispute this.

---

[1] Trader Joe's requests that the Court take judicial notice of various documents, including the labels of its tuna cans, and the results of the NOAA testing, among other things. (RJN, Exs. 1 & 2, ECF Nos. 62-2, 62-4, 62-5.) The Court grants Trader Joe's request and takes notice of the items identified in Trader Joe's Request for Judicial Notice (ECF No. 62) because the SAC necessarily relies on these documents, and neither party objects to their authenticity; in fact, the NOAA results are addressed to Plaintiffs' counsel. *See United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Carroll v. Yates*, No. 1:10-CV-00623-LJO, 2013 WL 100237, at *6, n.7 (E.D. Cal. Jan. 7, 2013) (taking judicial notice of NOAA study).

As discussed at length in the Court's prior Order, (ECF No. 54), Trader Joe's criticizes the Pressed Weight Standard, which is currently under reconsideration by the FDA, as being outdated and inaccurate. (Mot. 3–4.) Trader Joe's also claims that its alleged failure to follow the Pressed Weight Standard did not deceive consumers because the temporary marketing permit ("TMP") the FDA granted to Chicken of the Sea International, Bumble Bee Foods, LLC, and StarKist Co. (collectively, "Major Tuna Producers") allows them to market tuna without having to comply with the labeling requirements associated with the Pressed Weight Standard. (Mot. 3-4; ECF No. 54.) Federal Regulations require producers of tuna to state, "Below Standard in Fill," on cans of tuna that do not comply with the Pressed Weight Standard, unless the FDA granted the manufacturer a TMP. *See* 21 C.F.R. § 161.190(c)(4); 21 C.F.R. § 130.14(b). The FDA extended TMP for the Major Tuna Producers indefinitely on March 7, 2016. 81 Fed. Reg. 11813 (RJN, Ex. 7.) Trader Joe's does not allege that they are currently included in the TMP, but maintain that they applied in February 2017. (RJN, Ex. 8, ECF No. 62-11.)

Since the Court's prior Order dismissing the FAC on preemption grounds, Plaintiffs' SAC alleges three new categories of fact. First, instead of only violating the "federally mandated minimum standard of fill" set forth in title 21, sections 130.14(b) and 161.190 of the *Code of Federal Regulations* (SAC ¶ 1), Trader Joe's also violates California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), which prescribes labeling requirements for certain foods. (*Id.* ¶ 9.) Plaintiffs also allege that Trader Joe's "conduct runs contrary to the standard practices and procedures of other tuna manufacturers." (*Id.* ¶ 10.) Finally, Plaintiffs allege they relied on the statements on the label in making their purchases, and would not have purchased the tuna "if the labels had properly contained the statement 'Below Standard in Fill,'" as required by title 21, section 130.14 of the *Code of Federal Regulations*. (*Id.* ¶¶ 12–13.)

Plaintiffs' SAC alleges claims for: breach of express warranty (Count I), breach

of implied warranty of merchantability (Count II), unjust enrichment (Count III), negligent misrepresentation (Count VI), and fraud (Count VII). (*See generally* SAC.) Plaintiff Magier also brings claims on behalf of herself and the New York subclass for violation of New York General Business Law sections 349, 350. (*Id.* Counts IV & V.) Plaintiff Reyes also brings claims on behalf of herself and the California subclass for violation of California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"). (*Id.* Counts VIII–X.)

Trader Joe's moves to dismiss Plaintiffs' SAC on several grounds, including, as before, an implied preemption theory. (Mot. 5–8.)

### III. LEGAL STANDARD

A motion to dismiss under either Rule 12(c) or 12(b)(6) is proper where the plaintiff fails to allege a cognizable legal theory or where there is an absence of sufficient facts alleged under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Accusations of fraud require a heightened particularity in pleading. *See* Fed. R. Civ. P. 9(b). Federal Rule of Civil Procedure 9(b) establishes that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." The "circumstances" required by Rule 9(b) are the "who, what, when, when, where, and how" of the fraudulent activity. *Cafasso, ex rel. U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Id.* This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Generally, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the party. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

Trader Joe's moves to dismiss Plaintiffs' SAC on several different grounds: (1) implied preemption; (2) the doctrine of primary jurisdiction; (3) equitable abstention; and (4) a failure to state a viable claim. (*See generally* Mot.)

### A. Implied Preemption

Preemption may be express or implied. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484–85 (1996). Express preemption occurs where Congress explicitly preempts state law. *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). Implied preemption occurs where: 1) "state law actually conflicts with federal law;" or 2) "federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Id.* While, at times, the parties' briefing blurs the lines between these two distinct types of preemption, at issue here, is whether Plaintiffs' claims are impliedly preempted by the FDCA's mandate that all actions to enforce the FDCA are brought in the name of the United States, or, in limited circumstances, the states. 21 U.S.C. § 337. In the prior Order, the Court held that Plaintiffs' claims were impliedly preempted because Plaintiffs' purported state-law claims did not sufficiently "thread the gap" within the Ninth Circuit's rule in *Perez v. Nidek Co.* and were actually an attempt to improperly enforce the FDCA. (June 2, 2017 Order, ECF No. 54.) Now, Plaintiffs assert claims under California's Sherman Law, which they claim provides an independent basis for relief, and precludes a finding of preemption. (Opp'n Part II.A, ECF No. 63.) Plaintiffs also

maintain that the claims based on New York law also provide a right of action that is not an attempt to enforce the FDCA. (Opp'n 2–6.)

There is some tension in the law when it comes to courts' application of Supreme Court preemption precedent because the opinions, as well as the parties, often rely on express preemption cases, in an implied preemption scenario, and vice versa. The Court is guided by "the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citing and quoting *Lohr*, 518 U.S. at 485). "States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders." *Flo. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144 (1963) (collecting cases). "Parties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law.'" *Stengel v. Medtronic*, 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)). They also bear the burden of proof. *Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005).

The Court starts by addressing *Buckman Company v. Plaintiffs' Legal Committee*, which held that a plaintiff's state-law tort claims, relying on standards set forth in the FDCA, as amended by the Medical Device Amendments of 1976 ("MDA"), were preempted. 531 U.S. 341, 343 (2001). Under 21 U.S.C. section 337(a) of the FDCA—the same section at issue here—all proceedings to enforce FDA regulations "shall be by and in the name of the United States." "The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance" with the provisions of the FDCA. *Buckman*, 531 U.S. at 349 n.7.

In *Buckman*, the plaintiffs premised the defendant's liability on the defendant's allegedly fraudulent statements to the FDA, which resulted in approval of a medical device that injured plaintiffs. *Id.* at 343. In finding implied preemption, the Supreme Court explained that the "conflict stem[med] from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Administration, and that this authority is used by the Administration to achieve a somewhat delicate balance of statutory objectives." *Id.* at 348. Under the FDCA, the FDA may investigate suspected fraud, and may respond by using a variety of legal measures. *Id.* at 349 (explaining the FDA may respond by seeking injunctive relief, seizing the medical device, or pursuing criminal prosecutions). This flexibility of enforcement mechanisms, the Supreme Court reasoned, allowed the FDA "to make a measured response to suspected fraud upon the Administration[,]" and was a "critical component of the statutory and regulatory framework under which the FDA pursues difficult (and often competing) objectives." *Id.* In light of this, the Supreme Court held that the plaintiffs' claims were impliedly preempted because state-law fraud-on-the-FDA claims would "exert an extraneous pull on the scheme established by Congress." *Id.* at 353. Plaintiffs argue here that their claims in the SAC are based on an independent, but parallel state-law duty, and thus do not interfere with Congress's mandate that the United States is the only party able to enforce the FDCA. (Opp'n 7–9.) Plaintiffs' allegations here are also distinguishable from *Buckman* because Plaintiffs allege that Trader Joe's misled its *customers* regarding the amount of tuna in its product, not the FDA. In this sense, the state-law tort claims are not focused on policing Trader Joe's representations to the FDA, which Congress and the Supreme Court determined should be left to the FDA. *Buckman*, 531 U.S. at 353. Rather, Plaintiffs' claims seek to hold Trader Joe's accountable for its conduct directed at consumers.

In prior briefing and now, Plaintiffs cite *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917 (N.D. Cal. 2014), and argue that the Northern District considered the "exact

same argument for preemption," and rejected it.  (Opp'n 4.)  In its prior Order, the Court rejected *StarKist* because, unlike in *StarKist* where the plaintiff's claims were almost identical to the FDCA's requirements, Plaintiffs' claims in the FAC did not "mirror the relevant sections of the FDCA."  (June 2, 2017 Order 7, ECF No. 54.) Now, Plaintiffs bring claims pursuant to California's Sherman Law, which incorporates by reference the requirements of the FDCA, as it must, lest it be expressly preempted by 21 U.S.C. § 343–1(a), the FDCA's express preemption clause. *See Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (addressing express preemption under analogous statute in the MDA, 21 U.S.C. § 360k(a)).

In *Stengel v. Medtronic, Inc.*, the Ninth Circuit held that the FDCA "does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the [FDCA]."  704 F.3d at 1228; *see also Wyeth*, 555 U.S. at 568–69 (holding state-law claims sounding in negligence and strict product liability were not preempted because the regulatory scheme did not exhibit Congress's intent to preempt state remedies).  The Court's analysis then turns on whether California's Sherman Law, or the New York claims, provide "a state-law duty that parallels a federal-law duty under the [FDCA]."  *Stengel*, 704 F.3d at 1228; (SAC ¶¶ 8–9.)

### 1. *California's Sherman Law Establishes a Parallel State-Law Duty*

California's Sherman Law provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act…or adopted on or after [January 1, 1993] shall be the food labeling regulations of this state."  Cal. Health & Safety Code § 110100.  The Sherman Law also prohibits the misbranding of food, and states that "[a]ny food is misbranded if its labeling is false or misleading in any particular."  *Id.* § 110660.  These regulations are not expressly preempted by Section 343–1(a) of the FDCA because they incorporate the FDCA's requirements wholesale, and do not impose any additional obligations.  *Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *5–6 (N.D. Cal. June 18, 2013).

Here, Plaintiffs allege Trader Joe's violated the Sherman Law when it under filled cans of tuna because the Sherman Law incorporates by reference the FDCA regulations, which include the Pressed Weight Standard. (SAC ¶ 9; Opp'n 7–8.) Trader Joe's claims that this is just an end-run around the FDCA's enforcement clause, which limits enforcement of the FDCA, and thus the Pressed Weight Standard, to actions in the name of the United States. (Reply 2.) Trader Joe's also aptly points out that many of the cases Plaintiffs cite, address express preemption, not implied preemption. (Reply 2;) *see, e.g.*, *Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *8 (N.D. Cal. Feb. 25, 2013) ("Defendants also argue that the plaintiff's claims are preempted under [section 343–1], the FDCA's express preemption provision."); *Khasin v. Hershey Co.*, No.: 5:12-CV-01862 EJD, 2012 WL 5471153, at *4 (N.D. Cal. Nov. 9, 2012) ("Defendant argues that [section 337(a)] explicitly prevents Plaintiff from bringing forth this cause of action."). Despite the lack of clarity in Plaintiffs' papers regarding this distinction, the Court still finds that Plaintiffs' claims are not impliedly preempted because they are predicated on state-law duties that parallel the FDCA requirements.

We must ask whether Plaintiffs would have a claim if the Sherman Law specifically set forth the Pressed Weight Standard, instead of incorporating the FDCA requirements by reference. If Plaintiffs would have a claim based on state-law in that scenario, then Plaintiffs' claims are predicated on an independent state-law violation that parallels a federal duty. In that instance, Plaintiffs would not be relying on the FDCA, but rather the standard set forth in California's Sherman Law. The fact that the California law does not specifically set forth the Pressed Weight Standard results from consideration of practicalities. If California were required to update its statutes every time the federal government changed a standard, it would constantly have statutes stating standards that did not mirror the federal scheme, which would then be expressly preempted by Section 343–1(a). *See Samet*, 2013 WL 3124647, at *5–6. The Ninth Circuit has held that states may provide its citizens a private right of action

even where the federal scheme does not, which is what California has done here. *Stengel*, 704 F.3d at 1233; *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008) (analyzing the interaction between the FDCA and California's Sherman Laws and holding Plaintiffs' claims as actions "based on the violation of *state law*—albeit state law that is, in compliance with section 343–1, identical to FDCA provisions.").

Trader Joe's anticipated that Plaintiffs would rely on *Farm Raised Salmon Cases* to establish that the Sherman Law provides an independent state-law duty. (Mot. 7.) Trader Joe's argues that *Farm Raised Salmon Cases* is distinguishable because the "claims would have existed in the absence of the FDCA and did not rely on a federal regulation that the FDA was actively reevaluating." (*Id.*) The plaintiffs in *Farm Raised Salmon Cases* relied on standards set forth in the FDCA and the Nutrition Labeling and Education Act of 1990, and brought claims pursuant to California's Sherman Law, UCL, CLRA, and FAL. *Farm Raised Salmon Cases*, 42 Cal.4th at 1084–86. There are no substantive differences in Plaintiffs' reliance on the FDCA via California's Sherman Law here, and the arguments in *Farm Raised Salmon Cases*, where the California Supreme Court established California's desire to provide its citizens with an independent right of action. *Id.* at 1090. In both cases, the plaintiffs allege a violation of a state-law duty that is parallel to, but independent of, the requirements of the FDCA. *See Stengel*, 704 F.3d at 1228. This combined with the presumption against preemption in areas historically governed by the states, leads the Court to conclude Plaintiffs' claims in the SAC are not impliedly preempted. *Vassigh v. Bai Brands LLC*, Case No. 14–cv–05127–HSG, 2015 WL 4238886 (N.D. Cal. July 13, 2015) (collecting cases).

> 2.    *New York Law Does Not Provide an Independent, Parallel State-Law Duty*

Trader Joe's argues the New York claims should be preempted because California's Sherman Law does not apply to sales that occurred outside the state. (Mot. 8–10.) Plaintiffs do not argue that the Sherman Law applies to the New York

claims.   Like California, New York may provide state-law common law and/or statutory duties that establish a private right of action that is parallel to, but independent of, the requirements of the FDCA.  *Stengel*, 704 F.3d at 1228.  Whether New York has done so, is subject to debate among the courts.  *Compare Morelli v. Weider Nutrition Grp., Inc.*, 275 A.D.2d 607, 607–08 (N.Y. Sup. 2000) (holding claims under New York's General Business Laws sections 349 and 350 allegedly seeking to enforce FDCA regulations were not preempted by the FDCA's enforcement clause), *with Verzani v. Costco Wholesale Corp.*, No. 09 CIV 2117 CM, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 Fed. App'x 29 (2d Cir. 2011) ("[Plaintiff's] persistent allegations that Costco's labeling of the Shrimp Tray violates the FDCA['s]…regulations on the labeling of 'shrimp cocktails' indicates that his true purpose is to privately enforce alleged violations of the FDCA, rather than to bring a [state-law] claim for unfair and deceptive business practices.").

In *Morelli v. Weider Nutrition Group, Inc.*, the defendants argued that 21 U.S.C. § 337—the same section at issue here—preempted claims under New York's General Business Law sections 349 and 350.  *Morelli*, 275 A.D.2d at 607–08.  The plaintiffs' claims were based on the allegedly false and deceptive labeling of defendant's food products, as governed by the Federal Nutritional Labeling and Education Act, 21 U.S.C. § 343, *et seq.  Id.*   In holding the claims were not preempted, the court reasoned that Congress did not "intend[] to limit a State's otherwise undoubted power to afford consumers within its borders a statutory remedy for injuries caused by knowingly deceptive and misleading business practices where, as here, such remedy in no way interferes with the Federal prerogative to promulgate and enforce uniform food labeling standards."  *Id.*; *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 475–76 (S.D.N.Y. 2014) (addressing express preemption provision under FDCA, and holding claims under General Business Law section 349, and parallel common law claims were not preempted).

On the other hand, in New York and many other states, courts have concluded that where a state has not adopted statutes that expressly mirror the FDCA, like California's Sherman Law, a plaintiff's claim that relies on the defendant's failure to comply with federal regulations is impliedly preempted. *See Verzani*, 2010 WL 3911499, at \*3; *Henry v. Gerber Prods. Co.*, No.: 3:15-cv-02201-HZ, 2016 WL 1589900, at \*9 (D. Or. Apr. 18, 2016) ("Oregon, however, has not adopted such a statutory scheme, and thus Henry's argument that the Puff's labels do not comply with federal requirements is precluded by the FDCA"); *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 538 n. 26 (S.D. Ohio 2011) ("Courts have interpreted section 337(a) as prohibiting private rights of action under the FDCA and dismissed state law claims that seek to enforce the FDCA or its regulations"); *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1301 (D. Colo. 2008) ("[T]o the extent that these claims are merely derivative of plaintiff's state law [sic] claims, they are not saved merely by being recast as violations of the federal adulteration and misbranding statutes.").

The Court finds the reasoning of its sister courts precluding enforcement of the FDCA regulations persuasive. Where, like here, a plaintiff's true purpose is to enforce federal regulations, masquerading as a state-law claim where the state has not adopted a parallel statutory scheme is not sufficient to escape preemption. Thus, as discussed in the prior Order, because Plaintiffs' claims here based on New York common and statutory law all depend on the Pressed Weight Standard, they are impliedly preempted. Plaintiffs did not amend their New York claims in the SAC, and the Court finds that providing another opportunity for leave would be futile, and thus **GRANTS** Trader Joe's Motion as to Plaintiffs' claims for violations of New York General Business Law sections 349 (Count IV) and 350 (Count IV), and Magier's common law claims based on New York law on behalf of herself, and the New York Subclass.

**B.    Primary Jurisdiction Doctrine**

Trader Joe's argues the Court should stay this action pending the FDA's review of the Pressed Weight Standard, and Trader Joe's application for a TMP. (Mot. 10–

12

12.)  Plaintiffs principally argue that a stay is not appropriate because: 1) the FDA has been actively evaluating this standard for many years; 2) Plaintiffs' claims are based on state law, not the FDCA; and 3) Plaintiffs' claims predate the FDA's potential issuance of a TMP to Trader Joe's in the future, and thus a TMP would not absolve Trader Joe's of liability for its past acts.  (Opp'n 10–11.)

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  The doctrine "is committed to the sound discretion of the court when 'protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'" *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). Courts apply the following factors in determining whether to apply this doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.*

The Court declines to apply the primary jurisdiction doctrine here.  While Congress has placed food regulation in the hands of the FDA, the core issue is "whether a reasonable consumer would be misled by [Trader Joe's] marketing, which the district courts have reasonably concluded they are competent to address in similar cases." *Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) (citing *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1224 (N.D. Cal. 2010)). Further, the United States Tuna Foundation submitted its first Citizen Petition requesting an evaluation of the Pressed Weight Standard in 1994—more than 20 years ago.  (RJN, Ex. 3, ECF No. 62-6.)  The Major Tuna Producers filed their Citizen Petition in September 2015 (RJN Ex. 9, ECF No. 62-12), and Trader Joe's submitted

its application to participate in the TMP in February 2017.  (RJN, Ex. 8, ECF No. 62-11.)  At this rate, it is difficult to tell *when* the FDA will make a determination as to the validity of the Pressed Weight Standard, let alone whether it will change.  Accordingly, the Court chooses not to invoke the primary jurisdiction doctrine.

## C.    Equitable Abstention

Trader Joe's also argues that Plaintiffs' UCL and FAL claims should be dismissed under equitable abstention principles.  (Mot. 12–14.)  Courts consider whether addressing a plaintiff's claim:

> requires 'determining complex economic policy, which is best handled by the legislature or an administrative agency;' (2) 'granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress;' or (3) 'federal enforcement of the subject law would be more orderly, more effectual, less burdensome to the affected interests.'

*Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 784–85 (N.D. Cal. 2011) (quoting *Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1298 (2007)).  Here, Plaintiffs' claims do not involve consideration of complex economic policy.  Instead, they depend on whether a reasonable consumer would be misled by Trader Joe's labeling.  For the same reasons the Court declines to exercise its discretion under the primary jurisdiction doctrine, the Court declines to exercise its discretion under equitable abstention principles.

## D.    Failure to State a Claim: Consumer Protection Statute Claims[2]

Reyes alleges violations of the UCL, the FAL, and the CLRA.  (SAC ¶¶ 73–94.)  Trader Joe's argues that these claims should be dismissed because Plaintiffs fail to allege facts showing that a reasonable consumer would be deceived or misled by the labeling on Trader Joe's canned tuna products.  (Mot. 15–19.)

---

[2] Because the Court finds Plaintiffs' New York claims are impliedly preempted, it does not address Trader Joe's arguments regarding the substance of the New York claims.

*1.* *"Unlawful" Prong of UCL*

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The "unlawful" prong is separate from the "unfair" and "fraudulent" prongs of the UCL, making unlawful conduct independently actionable even if it is not unfair or fraudulent. *Id.* Reyes asserts violations under all three prongs of the UCL. (SAC ¶¶ 84–86.)

Trader Joe's alleges that Reyes' claims pursuant to the "unlawful" prong of the UCL should fail because she does not allege facts showing a reasonable consumer would be deceived or misled by Trader Joe's labeling. (Mot. 15–19.) However, the reasonable consumer test does not apply to claims brought under the unlawful prong of the UCL. *See Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 n.9 (2007); *Gitson v. Trader Joe's Co.*, No. 13-1333, 2013 WL 5513711, at *6 n.5 (N.D. Cal. Oct. 4, 2013). To state a claim under the unlawful prong of the UCL, a plaintiff only needs to sufficiently plead (1) a predicate violation, *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1097 (N.D. Cal. 2014); *see also People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002) ("[V]irtually any state, federal or local law can serve as the predicate for an action under section 17200"), and (2) an accompanying economic injury caused by that violation. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011).

Reyes premises all of her "unlawful" prong claims on the contention that Trader Joe's tuna is mislabeled under California's Sherman Law, which incorporates the FDCA regulations. (SAC ¶¶ 8–9.) The Sherman Law and CLRA each provide a predicate violation for purposes of the "unlawful" prong of the UCL. *See, e.g.*, *Kowalsky v. Hewlett–Packard Co.*, 771 F.Supp.2d 1156, 1162 (N.D. Cal. 2011)

(holding UCL unlawful prong dependent upon plaintiff's CLRA claim). Reyes also alleges she lost "money or property as a result of Defendants' UCL violations." (SAC ¶ 87.) This is sufficient to state a claim. Accordingly, the Court **DENIES** Trader Joe's Motion as to Reyes's claim pursuant to the "unlawful prong" of the UCL.

### 2. *The Reasonable Consumer Standard*

False advertising claims under California's FAL, the CLRA, and the fraudulent and unfair prongs of the UCL are governed by the reasonable consumer standard. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003). Under the reasonable consumer standard, a plaintiff must show that members of the public are likely to be deceived by the defendant's representations. *Williams*, 552 F.3d at 938 ("The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." (internal quotation marks omitted)). A likelihood of deception means that "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal. App. 4th at 508.

Plaintiffs advance several theories of how a reasonable consumer would be misled: 1) that consumers thought the amount of tuna in a 5-ounce can would be "adequate;" 2) that consumers would be misled because Trader Joe's tuna does not say that its product is "Below Standard in Fill," despite the fact that it does not comply with the Pressed Weight Standard; and 3) that consumers believed they were purchasing a product that was legal in the United States, when, in fact, it was not. (Opp'n 20; SAC ¶¶ 8, 23, 29, 34, 45, 49, 56, 77.) Plaintiffs also state that "Defendants' conduct also runs contrary to the standard practices and procedures of other tuna manufacturers." (SAC ¶ 10.)

With regard to the allegation regarding the "standard practices and procedures of other tuna manufacturers," the Court finds that this does not sufficiently set forth facts to make their claim plausible under Rule 8. Plaintiffs do not describe any of the alleged practices and procedures of other tuna manufacturers that would render Trader Joe's practices misleading to a reasonable consumer. Further, a significant portion of the parties' briefing is dedicated to describing the practices of the Major Tuna Producers, who, because of the TMP, do not have to identify their tuna cans as being "Below Standard in Fill." Thus, consumers in the market are presented with at least three other tuna manufacturers whose "standard practices and procedures" are to do exactly what Trader Joe's does. Thus, this allegation does not set forth facts sufficient for the Court to find it plausible that a reasonable consumer would be misled on this basis. Plaintiffs have leave to amend this claim.

At the hearing on Trader Joe's Motion to Dismiss Plaintiffs' FAC, counsel explained that the potential for confusion, as it relates to the Pressed Weight Standard, occurs because there may be varying amounts of water or oil in the can, in addition to the tuna. The labels of all of the cans at issue here state directly on the front of the label in conspicuous text the various species of tuna, and phrases such as, "in Olive Oil," or "in Water." (RJN, Ex. 1, ECF No. 62-11.) Given that a reasonable consumer must consider his or her preference for water or olive oil in choosing a product to purchase, the Court finds it hard to imagine that such a consumer, acting reasonably, would not know that the contents of the can they are purchasing includes fish *and* water or oil. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (holding that it is not plausible that a reasonable consumer would not understand that lip balm contains additional product in the tube, once the screw mechanism is flush with the tube).

Plaintiffs point to *StarKist*, which reasoned that it is "[t]he appearance of the can itself, not its label, [that] Plaintiff alleges to be misleading." *StarKist*, 30 F. Supp. 3d at 931–22. A reasonable consumer, while appreciating that the tuna can would

contain tuna and water or oil, may be misled if the amount of water or oil in the can is excessive. This, Plaintiffs argue, is the reason for the Pressed Weight Standard. Trader Joe's contends that to adequately allege that the can is misleading Plaintiffs need to set forth in detail the process Plaintiffs used to test the tuna pursuant to the Pressed Weight Standard, which they did not. (Mot. 15.) Plaintiffs allege that, because Trader Joe's is not a party to the TMP, it is required to display text on its can stating that the cans were "Below Standard in Fill," which it did not. 21 C.F.R. § 161.190(c)(4); 21 C.F.R. § 130.14(b); (SAC ¶ 8.) Plaintiffs also allege that they thought the tuna they were purchasing was legal for sale in the United States, and that had they known that it was not legal, i.e. below the Pressed Weight Standard, they would not have purchased it. (SAC ¶¶ 8, 23, 29, 34, 45, 49, 52, 56, 77.) It is plausible that a reasonable consumer would expect to purchase a legal product, and could be misled under the facts alleged by Plaintiffs.[3] Taking all inferences in favor of Plaintiffs, the Court finds that it is also plausible that a reasonable consumer would expect that the tuna they purchase complies with labeling requirements that are meant to inform consumers of the amount of tuna and water or oil in an otherwise opaque can.

To the extent Trader Joe's argues that a reasonable consumer would not have been aware of the food regulations that Trader Joe's allegedly violated, Courts in this district have rejected similar arguments at the motion to dismiss stage. *See, e.g.*, *Khasin*, 2012 WL 5471153, at *7 (rejecting defense argument that it is implausible that reasonable consumers would be aware of food labeling regulations); *Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 901 (N.D. Cal. 2012) (same). The Court

---

[3] Citing *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x 531, 534 (9th Cir. 2016), Trader Joe's argues, in a foot note, that the Ninth Circuit has already "rejected this exact theory of liability….." (Mot. 22 n.11.) However, Trader Joe's conveniently omits the portion of the quote that explains that the plaintiff there suggested that defendant's "statements about certain fruit products subject[ed] *him* to risk of fine or prosecution if *he* [wa]s found in possession of that fruit product." *Id.* at 534 (emphasis added). Here, Plaintiffs' allegations focus on their expectation to purchase a legal product, not a fear that they will be prosecuted criminally. (SAC ¶ 29.)

must take the allegations of the complaint as true, and based on Plaintiffs' allegations in the SAC, the Court finds that this is not one of the "rare situation[s] in which granting a motion to dismiss is appropriate." *Williams*, 552 F.3d at 939.

### 3. The FDA's Actions Are Not Dispositive

Trader Joe's urges the Court to consider the FDA's findings regarding the Pressed Weight Standard in evaluating Plaintiffs' claims against the reasonable consumer standard. *Rojas v. General Mills, Inc.*, No. 12-cv-05099-WHO, 2013 WL 5568389, at *4–5 (N.D. Cal. Oct. 9, 2013) (noting the FDA's views are relevant to the issue of whether a label misleading, but also noting that they are not the sole or dispositive factor). Trader Joe's argues that the FDA determined their label cannot be misleading because the Major Tuna Producers, pursuant to the TMP, are not required to state "Below Standard in Fill" on their labels, even though they are not operating under the Pressed Weight Standard. (*Id.*; RJN, Ex. 7, ECF No. 62-10.) Plaintiffs argue that the FDA's acceptance of the Major Tuna Producer's labels has no bearing on Trader Joe's because the TMP does not apply to Trader Joe's. In any event, the TMP is not dispositive because it merely allows the tuna producers to conduct "market testing." (Opp'n 18); 79 Fed. Reg. 35362. Further, Plaintiffs argue that, to the extent that Trader Joe's is eventually included in the TMP, it still would not remedy the violations that occurred during the periods alleged in the SAC, and before Trader Joe's was included in the TMP. The Court finds Plaintiffs' reasoning as to the FDA's actions persuasive. While the Court considers the FDA action in its evaluation of the reasonable consumer standard, the TMP does not apply to Trader Joe's, and even if it were eventually to apply to Trader Joe's, it would not have been in effect during the time periods alleged in the SAC. On its face, the TMP also only authorizes "market testing" of the current label. 79 Fed. Reg. 35362. There is no evidence of the results of the testing other than the fact that the FDA extended the TMP indefinitely. 81 Fed. Reg. 11813 ("We find that it is in the interest of consumers to extend the

permit for the market testing of canned tuna to gain additional information on consumer expectations and acceptance."). This is not enough to tip the scales.

### 4. *Plaintiffs Sufficiently Allege a Misrepresentation*

Because Plaintiffs' claims sound in fraud, they must also meet the particularity requirements under Federal Rule of Civil Procedure 9(b). The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standard applies to claims for violation of the UCL, FAL, or CLRA that are grounded in fraud. *Vess*, 317 F.3d at 1103–06; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To satisfy Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106.

Trader Joe's argues that Plaintiffs fail to sufficiently allege a misrepresentation because the statements regarding drained and net weight on Trader Joe's cans of tuna are accurate. (Mot. 14–15.) Plaintiffs respond that the misrepresentation stems from the can itself, not the drained and net weight, and that Trader Joe's failed to include "Below Standard in Fill" on the can, as it was required to do pursuant to the FDCA regulations. (Opp'n 13–17; SAC ¶¶ 1–14, 30, 31, 52, 59, 78, 87.) In the SAC, Plaintiffs allege when and where they purchased the tuna, and that they relied on Trader Joe's express and implied warranties that the cans of tuna "contained an adequate amount of tuna for a 5-ounce can and that Trader Joe's Tuna is legal for sale in the United States." (SAC ¶¶ 45, 63, 77, 91.) They also claim they paid substantially more based on these representations. (*Id.*) Plaintiffs sufficiently set forth the who, what, when, where, and how of Trader Joe's allegedly fraudulent conduct. *Vess*, 317 F.3d at 1106; *StarKist*, 30 F. Supp. 3d at 934 (holding similar allegations met the pleading standard for fraud). Accordingly, the Court **DENIES** Trader Joe's Motion with respect to Plaintiffs' California claims for fraud (Count VII) and violation of the CLRA (Count VIII), UCL (Count IX), and FAL (Count X).

//

//

### E.     Negligent Misrepresentation

In California, to plead negligent misrepresentation, Plaintiffs must allege: "(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Ragland v. U.S. Bank Nat. Ass'n*, 209 Cal. App. 4th 182, 196–97 (2012).

Trader Joe's argues that the economic loss doctrine precludes Plaintiffs' claim for negligent misrepresentation under California. (Mot. 19–20.) Plaintiffs argue that California classifies negligent misrepresentation as a type of fraud, and thus economic loss is recoverable. (Opp'n 21.) "The economic loss doctrine provides that a plaintiff's tort recovery of economic damages is barred unless such damages are accompanied by some form of harm to person or property, or the action falls under an exception." *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1035 (N.D. Cal. 2016) (citing *N. Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 777 (1997).

Plaintiffs cite *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004) for the proposition that California law permits negligent misrepresentation claims, despite only alleging economic loss. (Opp'n 21.) As described in *Strumlauf*, "[i]n *Robinson*, the California Supreme Court distinguished between two acts by the defendant, finding that one act was a breach of contract, and the other was fraudulent conduct—independent of the breach—that put the plaintiff's physical safety at risk." *Strumlauf*, 192 F. Supp. 3d at 1035 (citing *Robinson*, 34 Cal. 4th at 991)). In holding that the economic loss doctrine did not bar plaintiff's claims, the *Robinson* court emphasized that its holding was "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of plaintiff's economic loss." *Robinson*, 34 Cal. 4th at 993. Plaintiffs make no such allegations here, and the Court finds Plaintiffs' claim for negligent misrepresentation barred by the economic loss rule.

Because the Court does not see how this claim could be remedied if Plaintiffs had leave to amend, the Court **GRANTS** Trader Joe's Motion as to this claim without leave to amend.

## F. Breach of Express & Implied Warranties

### 1. Pre-Suit Notice

"The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy."  Cal. Com. Code §2607(3)(A).  Trader Joe's argues that Plaintiffs failed to provide reasonable pre-suit notice of their breach of express warranty claims, as required under California law.  (Mot. 21.)

First, Plaintiffs claim that they were not required to provide pre-suit notice because they are alleging claims against Trader Joe's as a manufacturer.  (Opp'n 22.) In California, where a plaintiff brings claims against a defendant for breach of express warranty in its capacity as a manufacturer, not as a seller, the plaintiff is not required to give pre-suit notice.  *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012) (citing *Aaronson v. Vital Pharm., Inc.*, No. 09–CV–1333 W (CAB), 2010 WL 625337, at *6 (S.D. Cal. Feb. 17, 2010)).  Plaintiffs allege claims against Trader Joe's in their capacity "as the designers, manufacturers, marketers, distributors, and/or sellers" of the tuna.  (SAC ¶ 29.)  California courts have reasoned that notice is not required to the manufacturer of a product because "it will not occur to [a buyer] to give notice to one with whom he has had no dealings."  *Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 61 (1963) (citations and quotations omitted).  Here, there is no reasonable interpretation of the SAC that would allow the Court to find it should not have occurred to Plaintiffs to give notice to Trader Joe's.  *Id.* Plaintiffs were required to give notice to Trader Joe's because they allege they had direct dealings with Trader Joe's, as evidenced by the allegations that Plaintiffs purchased the tuna at "a Trader Joe's retail store."  (SAC ¶¶ 12–13;) *see also Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014).

Plaintiffs claim that they provided adequate notice because they informed Trader Joe's "within days after learning of the breach." (Opp'n 22.) Plaintiffs do not allege this in the portion of the SAC setting forth their express warranty claim, nor do they explain this argument in their Opposition. (SAC ¶¶ 27–31.) The Court interprets this to mean that Plaintiffs notified Trader Joe's within days after receiving the results of NOAA's testing pursuant to the Pressed Weight Standard. Plaintiffs allege that they provided notice pursuant to the CLRA on December 21, 2015. (*Id.* ¶ 79, Ex A.[4]) Plaintiffs' demand letter provides that the "letter also serves as notice pursuant to U.C.C. § 2-607(3)(a) concerning the breaches of express and implied warranties…." (SAC, Ex. A.)

Trader Joe's urges the Court to find that the notice was not reasonable as a matter of law because Plaintiffs stopped purchasing Trader Joe's tuna in 2013, and 2014—a year and two years prior to giving notice, respectively. (Mot. 21.) The Court agrees that Plaintiffs failed to give notice within a reasonable period as a matter of law. *Ice Bowl v. Spalding Sales Corp.*, 56 Cal. App. 2d 918, 921–22 (1943) (holding notice untimely as a matter of law where given four months after the purchase of defective skates).

To the extent Plaintiffs claim they needed the results from NOAA prior to providing notice, at the very least, Plaintiffs' claims based on the "standard practices and procedures" of other tuna manufacturers should have been apparent to them when they opened the cans of tuna. Yet, Plaintiffs waited more than a year before notifying Trader Joe's of the alleged breach of warranty. Accordingly, the Court **GRANTS** Trader Joe's Motion as to Plaintiffs' breach of express warranty claims against Trader

---

[4] The Court notes a discrepancy in the SAC that it treats as a typographical error. The demand letter is dated December 21, 2015, whereas Paragraph 79, describing the demand letter, states Plaintiffs gave notice on December 29, 2015.

Joe's as a seller.[5]  The Court denies leave to amend because Plaintiffs could not remedy this defect under any plausible set of facts.

### 2. *Breach of Implied Warranty of Merchantability*

Trader Joe's argues that Plaintiffs' implied warranty claims should be dismissed because the tuna was fit for consumption, and thus satisfied the implied warranty of this food product.  (Mot. 23.)  Plaintiffs contend that they allege a claim because in addition to a product being suitable for its intended use—to eat—the implied warranty provides that the product is "adequately contained, packaged, and labeled as the agreement may require" and "[c]onform[s] to the promises or affirmations of fact made on the container or label if any."  Cal. Com. Code § 2314(2).  Here, Plaintiffs allege the packaging of Trader Joe's tuna was inadequate because it was not "consistent with an implied promise that they were adequately filled with tuna." *StarKist*, 30 F. Supp. 3d at 933; (SAC ¶ 35).  In opposition, Trader Joe's cites *Strumlauf v. Starbucks Corporation*, 192 F. Supp. 3d 1025, 1032 (N.D. Cal. 2016) and *Red v. General Mills, Inc.*, Case No. 2:15-cv-02232-ODW(JPR), 2015 WL 9484398, at *6 (C.D. Cal. Dec. 29, 2015), which are distinguishable because the allegations there did not focus on the adequacy of the packaging of the product, but only on whether a consumer could eat the product.  Accordingly, the Court finds Plaintiffs alleged sufficient facts to state a claim for breach of the implied warranty of merchantability, and **DENIES** Trader Joe's Motion as to this claim.

## H.   UNJUST ENRICHMENT

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) and *Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 912 (2008)).  However, courts construe such claims as an action in quasi-contract seeking

---

[5] Trader Joe's also argues that Plaintiffs fail to allege an express warranty.  (Mot. 22.) However, because Plaintiffs' breach of express warranty claim fails for lack of notice, the Court does not address this argument.

restitution.  *Id.* (citing and quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 230 (2014)).

Trader Joe's asserts that Plaintiffs' claim for unjust enrichment should be dismissed because it is duplicative of the relief Plaintiffs seek in their other claims and because Plaintiffs failed to plead unjust or inequitable conduct.  (Mot. 23–24.)  Trader Joe's cites *Trainum v. Rockwell Collins, Inc.*, a New York case, for the proposition that courts may dismiss unjust enrichment claims as duplicative.  (*Id.*;) 16-cv-7005 (JSR), 2017 WL 2377988, at *20 (S.D.N.Y. May 31, 2017).  However, this court is bound by Ninth Circuit precedent, and the Ninth Circuit specifically held that a duplicative cause of action is not grounds for dismissal.  *Astiana*, 783 F.3d at 762–63 (citing Federal Rule of Civil Procedure 8(d)(2), which allows parties to plead in the alternative).  Plaintiffs allege that Trader Joe's acted unjustly when it misled consumers as to the adequacy of the amount of tuna in its cans.  (SAC ¶¶ 45–46.) Accordingly, the Court **DENIES** Trader Joe's Motion on this ground.

## V.    CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS, IN PART, AND DENIES, IN PART,** Trader Joe's Motion to Dismiss.  (ECF No. 62.)  Plaintiffs are granted leave to amend, to the extent allowed by this Order.  Should Plaintiffs wish to amend their complaint, they must file an amended complaint within 14 days of this Order, and in compliance with Central District Local Rule 15.

October 3, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**