**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
E-Mail:  scott@bursor.com

*Interim Class Counsel*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Trader Joe's Tuna Litigation* | Case No. 2:16-cv-01371-ODW-AJW |
| | **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Date:  October 22, 2018 |
| | Time:  1:30 p.m. |
| | Courtroom:  5D, 5th Floor |
| | Judge:  Hon. Otis D. Wright II |

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ........................................................................................ 1

II.     PROCEDURAL BACKGROUND ............................................................. 4

     A.      Pleadings And Motions ................................................................... 4

     B.      Discovery ......................................................................................... 7

III.    THE LEGAL STANDARD FOR PRELIMINARY APPROVAL .................. 8

IV.     THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE,
     AND REASONABLE ............................................................................... 10

     A.      Strength Of The Plaintiff's Case .................................................... 11

     B.      Risk Of Continuing Litigation ....................................................... 11

     C.      Risk Of Maintaining Class Action Status ..................................... 12

     D.      The Extent Of Discovery And Status Of Proceedings ................... 13

     E.      Experience And Views Of Counsel ................................................ 13

V.      THE COURT SHOULD PROVISIONALLY CERTIFY THE
     SETTLEMENT CLASS FOR THE PURPOSES OF
     PRELIMINARY APPROVAL................................................................... 14

     A.  The Class Satisfies Rule 23(a)......................................................... 15

          1.  Numerosity ......................................................................... 15

          2.  Commonality ...................................................................... 15

          3.  Typicality ........................................................................... 16

          4.  Adequacy............................................................................ 17

     B.  The Class Satisfies Rule 23(b)(3) .................................................... 18

          1.  Common Questions Of Law And Fact Predominate ........ 18

          2.  A Class Action Is The Superior Mechanism For
             Adjudicating This Dispute ................................................ 20

VI.     THE PROPOSED NOTICE PROGRAM PROVIDES
     ADEQUATE NOTICE AND SHOULD BE APPROVED ........................... 21

VII.    CONCLUSION ....................................................................................... 24

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Alaniz v. California Processors, Inc.*,
  73 F.R.D. 269 (N.D. Cal. 1976) ...........................................................................8

*Anchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................14, 18, 20

*Arnold v. United Artists Theatre Circuit, Inc.*,
  158 F.R.D. 439 (N.D. Cal. 1994) .........................................................................16

*Beaver v. Alaniz*,
  439 U.S. 837 (1978) ...........................................................................................8

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................10

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...........................................................................10

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
  2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ...................................................11

*Dunk v. Ford Motor Company*,
  48 Cal. App. 4th 1794 (1996) .............................................................................9

*Fulford v. Logitech, Inc.*,
  2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010) ...............................13

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...................................................11

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ...........................................................................................16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................passim

*In re Abbott Laboratories Norvir Anti-Trust Litig.*,
  2007 WL 1689899 (N.D. Cal. 2007) ...............................................................19, 20

*In re Amla Litig.*,
  282 F. Supp. 3d 751 (S.D.N.Y. 2017) .................................................................20

*In re Apple Computer Sec. Litig.*,
  1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) .........................................12

*In re Checking Account Overdraft Litig.*,
  307 F.R.D. 656 (S.D. Fla. 2015) .................................................................19, 20

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...........................................................................13

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................................ 12

*In re Omnivision Techns., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................. 13

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................................. 9, 13

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ........................................................................... 8, 9

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................... 8

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ....................................................................... 9, 10, 11

*Pennsylvania Emp. Benefit Trust Fund v. Zeneca, Inc.*,
  710 F. Supp. 2d 458 (D. Del. 2010) ...................................................................... 19

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v.
  Anderson*,
  390 U.S. 414 (1968) .......................................................................................... 9

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ......................................................................... 11, 13

*Shum v. Intel Corp.*,
  630 F. Supp. 2d 1063 (N.D. Cal. 2009) .................................................................. 20

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) .......................................................................... 15

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .............................................................................. 17

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ...................................................................................... 15

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................................. 18

**STATUTES**

28 U.S.C. § 1404 .................................................................................................. 5

28 U.S.C. § 1407 .................................................................................................. 5

New York's General Business Law § 349 .............................................................. 4, 6

New York's General Business Law § 350 .............................................................. 4, 6

# RULES

Fed. R. Civ. P. 23(a) ......................................................................17, 18

Fed. R. Civ. P. 23(a)(1) ........................................................................15

Fed. R. Civ. P. 23(a)(4) ...................................................................17, 18

Fed. R. Civ. P. 23(a)(2) ........................................................................15

Fed. R. Civ. P. 23(a)(3) ........................................................................16

Fed. R. Civ. P. 23(b) .............................................................................18

Fed. R. Civ. P. 23(b)(3) .............................................................18, 20, 21

Fed. R. Civ. P. 23(c)(2) .................................................................21, 22

Fed. R. Civ. P. 23(c)(3) ........................................................................22

Fed. R. Civ. P. 23(e) .............................................................................21

Fed. R. Civ. P. 23(e)(1) ........................................................................21

Fed. R. Civ. P. 23(g) ..............................................................................6

# TREATISES

*Manual for Complex Litigation, 3d Edition*, § 30.41 ..............................8, 21

NEWBERG ON CLASS ACTIONS § 11.25 (1992) .....................................9, 15, 17

William B. Rubenstein, Newberg on Class Actions § 12:35 (5th ed. 2014)...............24

# I.   INTRODUCTION

Plaintiff Atzimba Reyes ("Plaintiff Reyes" or the "Class Representative"), by and through her counsel, respectfully submits this memorandum of law in support of her Motion for Preliminary Approval of Class Action Settlement.

The Stipulation for Class Action Settlement ("Settlement Agreement")[1] states that Defendants Trader Joe's Company and Trader Joe's East Inc. (collectively, "Trader Joe's" or "Defendants," and together with Plaintiff Reyes, the "Parties"), on behalf of the suppliers of the Trader Joe's Tuna Products,[2] will pay $1.3 million into a Settlement Fund in cash for the settlement of all claims in this action.  *See* Settlement Agreement ¶ 2.1, Fisher Decl. Ex. 1.  The Settlement Agreement defines the Settlement Class to include:

> All persons in the United States who purchased Trader Joe's Tuna from January 5, 2012 through the date on which class notice is disseminated.

The Settlement Agreement includes a $29.00 per claim payout for Settlement Class Members, subject to pro rata dilution if the total amount of claims exceeds the available funds.  Settlement Agreement ¶ 2.3(a), Fisher Decl. Ex. 1.  This is an excellent result for Settlement Class Members compared to their likely recovery should they prevail at trial.  That is, a recovery of $29 cash is a substantial portion of the maximum recovery any Settlement Class Member could reasonably expect, considering the relatively low cost of a can of tuna, only a fraction of which is alleged to be underfilled.  Fisher Decl. ¶¶ 13-14.

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Settlement Agreement, filed concurrently herewith.  *See* Fisher Decl. Ex. 1.

[2] As used in both the Settlement Agreement and in Plaintiff's operative Class Action Complaint, the terms "Trader Joe's Tuna" and "Trader Joe's Tuna Products" mean:  (i) 5-ounce canned Trader Joe's Albacore Tuna in Water Salt Added, (ii) 5-ounce canned Trader Joe's Albacore Tuna in Water Half Salt, (iii) 5-ounce canned Trader Joe's Albacore Tuna in Water No Salt Added, (iv) 5-ounce canned Trader Joe's Albacore Tuna in Olive Oil Salt Added, (v) 5-ounce canned Trader Joe's Skipjack Tuna in Water With Sea Salt, and (vi) 5-ounce canned Trader Joe's Yellowfin Tuna in Olive Oil Solid Light.

As in any class action, the proposed Settlement is initially subject to preliminary approval and then to final approval by the Court after notice to the class and a hearing.  Plaintiff now requests that this Court enter an order in the form of the accompanying [Proposed] Order Granting Motion For Preliminarily Approval Of Class Action Settlement, which will:

(1)   Grant preliminary approval of the proposed Settlement;

(2)   Provisionally certify the Settlement Class on a nationwide basis for the purposes of preliminary approval, designate Plaintiff Reyes as the Class Representative, and Bursor & Fisher, P.A. as Class Counsel for the Settlement Class;

(3)   Establish procedures for giving notice to members of the Settlement Class;

(4)   Approve forms of notice to Settlement Class Members;

(5)   Mandate procedures and deadlines for exclusion requests and objections; and

(6)   Set a date, time and place for a final approval hearing.

The proposed Settlement is fair and reasonable and falls within the range of possible approval.  It is the product of extended arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case.  Class Counsel has conducted an extensive investigation into the facts and law relating to this matter and has engaged in lengthy and detailed informal discovery to confirm critical facts regarding the scope of the class, the volume of product sales, the role of suppliers, relevant labeling and advertising, and the relative values of Trader Joe's Tuna Products sold during the Settlement Class Period.  The investigation has included commissioning pressed weight testing of Trader Joe's Tuna and reviewing

1  numerous pressed weight test reports in cooperation with qualified experts from the

2  U.S. National Oceanic and Atmospheric Administration ("NOAA").

3       Additionally, Bursor & Fisher is singularly experienced with the issues

4  particular to this action.  In *Hendricks v. StarKist Co*., No. 13-cv-00729-HSG (N.D.

5  Cal.) (the "*StarKist* Action"), Bursor & Fisher successfully resolved virtually identical

6  claims involving the alleged underfilling of StarKist-brand 5-ounce cans of tuna.  *See*

7  July 23, 2015 Order Granting Preliminary Approval, Ex. 2 to Fisher Decl.; *see also*

8  Bursor & Fisher Firm Resume, Ex. 4 to Fisher Decl.  In fact, Bursor & Fisher is the

9  only law firm that has ever successfully litigated claims involving the underfilling of

10  canned tuna to resolution.  Fisher Decl. at ¶ 3.  In the *StarKist* Action, the parties

11  agreed to a settlement valued at $12 million and received over 2.4 million claims, the

12  largest number of submitted claims at the time from class members in the history of

13  class actions.  *Id*.

14       Since entering into the settlement in the *StarKist* Action, Bursor & Fisher

15  brought this action and two other additional cases concerning the alleged underfilling

16  of canned tuna:  *Soto v. Wild Planet Foods, Inc.*, 15-cv-05082-BLF (N.D. Cal.) (the

17  "*Wild Planet* Action"); and *Soto v. Safeway, Inc.,* 15-cv-05078-EMC (N.D. Cal.) (the

18  "*Safeway* Action").  *Id.* at ¶ 4.  The *Wild Planet* Action concerned allegations that

19  Wild Planet and Sustainable Seas-brand canned tuna were underfilled.  *Id.*  On

20  November 21, 2016, prior to a ruling on the defendant's motion to dismiss, the parties

21  settled the *Wild Planet* Action on a nationwide basis, comprising of a common fund in

22  the amount of $1.7 million.  *Id.*, Ex. 3.  Similarly, the *Safeway* Action concerned

23  allegations that Safeway-brand canned tuna was underfilled.  On March 1, 2017, prior

24  to a ruling on the defendant's motion to dismiss, the parties resolved the *Safeway*

25  matter to their mutual satisfaction.  *See id.* at ¶ 4.

26       As a result of these efforts and the experience gained in litigating the *StarKist*

27  Action, the *Wild Planet* Action, and the *Safeway* Action, Class Counsel is fully

28

---

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          3
CASE NO. 2:16-CV-01371-ODW-AJW

1  informed of the merits of the instant action and the proposed settlement, has

2  substantial experience in consumer litigation regarding underfilling of tuna cans and

3  has, as a result, been efficient in substantially streamlining the fact gathering process

4  so as to reach the proposed settlement promptly and without protracted litigation.  *Id.*

5  at ¶¶ 3-5.

6        The proposed Settlement Class meets every element of Rule 23(a) and (b)(3).

7  The Settlement Class is so numerous that the joinder of all members is impracticable;

8  there are questions of law or fact common to the proposed Settlement Class; the

9  proposed Class Representative's claims are typical of those of the Settlement Class;

10  and the proposed Class Representative will fairly and adequately protect the interests

11  of the proposed Settlement Class.  In addition, common issues of law and fact

12  predominate over any questions affecting only individual class members, and a class

13  action as proposed here is superior to other available methods for the fair and efficient

14  adjudication of the controversy.

15  **II.  PROCEDURAL BACKGROUND**

16      **A.  Pleadings And Motions**

17        On January 5, 2016, Plaintiff Sarah Magier commenced an action entitled

18  *Magier v. Trader Joe's Co.*, No. 1:16-cv-00043 (S.D.N.Y.), as a proposed class

19  action, asserting claims for breach of express warranty, breach of the implied

20  warranty of merchantability, breach of the implied warranty of fitness for a particular

21  purpose, unjust enrichment, violation of New York's General Business Law § 349,

22  violation of New York's General Business Law § 350, negligent misrepresentation,

23  and fraud.  At issue in the *Magier* matter were allegations that Trader Joe's

24  underfilled certain 5-ounce canned tuna products.

25        On January 29, 2016, Plaintiff Sarah Magier amended her operative complaint

26  to add the allegations of Plaintiff Atzimba Reyes.  In doing so, the amended *Magier*

27  complaint added claims for violation of California's Consumers Legal Remedies

28

---

Act, violation of California's Unfair Competition Law, and violation of California's False Advertising Law.

On February 26, 2016, Plaintiff Amy Joseph commenced an action entitled *Joseph v. Trader Joe's Co.*, 2:16-cv-01371-ODW-AJW (C.D. Cal.), as a proposed class action. At issue in the *Joseph* matter were allegations that Trader Joe's Company underfilled certain 5-ounce canned tuna products.

On February 26, 2016, Plaintiff Kathy Aliano commenced an action entitled *Aliano v. Trader Joe's Co.*, No. 1:16-cv-02623 (N.D. Ill.), as a proposed class action. At issue in the *Aliano* matter were allegations that Trader Joe's Company underfilled certain 5-ounce canned tuna products.

On March 11, 2016, Plaintiff Aliano filed a Motion for Coordination or Consolidation and Transfer Pursuant to 28 U.S.C. § 1407 (the "Motion for Coordination") with the United States Judicial Panel on Multidistrict Litigation (the "JPML"), seeking coordination of the *Aliano*, *Joseph*, and *Magier* matters.

On April 19, 2016, Plaintiff Christine Shaw commenced an action entitled *Shaw v. Trader Joe's Co.*, No. 2:16-cv-02686-ODW-AJW (C.D. Cal.), as a proposed class action. At issue in the *Shaw* matter were allegations that Trader Joe's Company underfilled certain 5-ounce canned tuna products.

On May 26, 2016, counsel for the Parties appeared before the JPML and agreed to stipulate to a change of venue pursuant to 28 U.S.C. § 1404, such that the *Aliano*, *Joseph*, *Magier*, and *Shaw* matters "will be venued in the Central District of California." Based on these representations, the JPML considered the Motion for Coordination to be withdrawn, in favor of voluntary transfer and coordination pursuant to 28 U.S.C. § 1404.

On November 1, 2016, following the Parties' voluntary transfer to the U.S. District Court for the Central District of California before Judge Otis D. Wright II, the Court ordered the *Aliano*, *Joseph*, *Magier*, and *Shaw* matters to be consolidated

1  and thereafter captioned *In re Trader Joe's Tuna Litigation*, No. 2:16-cv-01371-
2  ODW-AJW (C.D. Cal.) (the "Action").

3      On November 7, 2016, counsel for Plaintiffs Aliano, Joseph, and Shaw filed a
4  Motion for Appointment of Interim Class Counsel, pursuant to Fed. R. Civ. P. 23(g).
5  On November 7, 2016, counsel for Plaintiffs Magier and Reyes filed a competing
6  Motion for Appointment of Interim Class Counsel.  On December 21, 2016, the
7  Court appointed Plaintiffs Magier and Reyes' counsel, Bursor & Fisher, P.A., as sole
8  Interim Class Counsel.

9      On January 20, 2017, Plaintiffs Magier and Reyes filed the First Amended
10  Class Action Complaint in the consolidated *In re Trader Joe's Tuna Litigation*
11  matter, asserting claims for breach of express warranty, breach of the implied
12  warranty of merchantability, unjust enrichment, violation of New York's General
13  Business Law § 349, violation of New York's General Business Law § 350,
14  negligent misrepresentation, fraud, violation of California's Consumers Legal
15  Remedies Act, violation of California's Unfair Competition Law, and violation of
16  California's False Advertising Law.

17      On March 21, 2017, Trader Joe's moved to dismiss the First Amended Class
18  Action Complaint in the Action.  On June 2, 2017, the Court granted Trader Joe's
19  motion to dismiss, with leave to amend, based predominantly on preemption
20  grounds.

21      On June 30, 2017, Plaintiffs Magier and Reyes filed the Second Amended
22  Class Action Complaint in the Action.  On July 28, 2017, Trader Joe's moved to
23  dismiss the Second Amended Class Action Complaint in the Action.  On October 3,
24  2017, the Court granted in part and denied in part Trader Joe's motion to dismiss the
25  Second Amended Class Action Complaint.  Specifically, the Court dismissed
26  Plaintiff Magier's claims in their entirety as preempted.  As to Plaintiff Reyes, the
27  Court dismissed her claims for breach of express warranty and negligent

28

---

1    misrepresentation.  Accordingly, the remaining claims consist of Plaintiff Reyes'
2    claims for breach of the implied warranty of merchantability, unjust enrichment,
3    fraud, violation of California's Consumers Legal Remedies Act, violation of
4    California's Unfair Competition Law, and violation of California's False Advertising
5    Law.  On November 9, 2017, Trader Joe's filed its Answer to the Second Amended
6    Class Action Complaint.  On March 30, 2018, Trader Joe's filed an Amended
7    Answer to the Second Amended Class Action Complaint.

8    **B.    Discovery**

9            Plaintiff engaged in formal and informal factual discovery over a period of
10   several months with Trader Joe's, exchanging detailed data and analytics regarding
11   Trader Joe's pressed weight testing, as well as nationwide wholesale and retail sales
12   data regarding the Trader Joe's Tuna Products.  Fisher Decl. at ¶ 7.  Plaintiff also
13   commissioned the services of NOAA for a series of pressed weight tests over a period
14   of several months, which included consultations with experts from NOAA regarding
15   the test data and its reliability.  *Id.*  Because Plaintiff had the benefit of Class
16   Counsel's experience in the *StarKist* Action, the *Wild Planet* Action, and the *Safeway*
17   Action, Plaintiff was able to substantially streamline the fact-gathering process,
18   which, in light of Trader Joe's cooperation and production of necessary
19   documentation and the test data obtained from NOAA, resulted in an efficient
20   resolution without protracted litigation.  *Id.*

21           Specifically, on November 22, 2017, the Parties exchanged discovery
22   requests.  *Id.* at ¶ 8.  Specifically, Plaintiff Reyes served interrogatories and requests
23   for production on Trader Joe's.  *Id.*  That same day, Trader Joe's served requests for
24   production on Plaintiff Reyes.  *Id.*

25           On December 22, 2017, the Parties served their written discovery responses.
26   *Id.* at ¶ 9.  Plaintiff Reyes made her first document production on January 2, 2018.
27   *Id.*  Trader Joe's made their first document production on January 19, 2018.  *Id.*

28

1   Trader Joe's made subsequent document productions on May 11, 2018 and May 21,
2   2018.  *Id.*

3         On March 1, 2018, Plaintiff Reyes served a subpoena on a third-party,
4   Tri-Union Seafoods, LLC ("Tri-Union").  *Id.* at ¶ 10.  On April 13, 2018, Tri-Union
5   made its first document production.  *Id.*  Tri-Union made a subsequent document
6   production on April 20, 2018.  *Id.*

7         On May 14, 2018, Plaintiff Reyes served a notice of deposition pursuant to
8   Rule 30(b)(6) on Trader Joe's.  *Id.* at ¶ 11.  On May 16, 2018, Plaintiff Reyes served
9   an additional five deposition notices for various employees of Trader Joe's.  *Id.*

10        On July 9, 2018, following months of informal negotiations, the Parties
11  attended an in-person mediation, where they executed a binding Class Action
12  Settlement Term Sheet, subject to approval of the Court.  *Id.* at ¶ 12.

13  **III.    THE LEGAL STANDARD FOR PRELIMINARY APPROVAL**

14        Approval of class action settlements involves a two-step process.  First, the
15  Court must make a preliminary determination whether the proposed settlement
16  appears to be fair and is "within the range of possible approval."  *In re Syncor ERISA*
17  *Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F.
18  Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Aalaniz v. California Processors, Inc.*, 73
19  F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S.
20  837 (1978).  If so, notice can be sent to Settlement Class Members and the Court can
21  schedule a final approval hearing where a more in-depth review of the settlement
22  terms will take place.  *See Manual for Complex Litigation, 3d Edition*, § 30.41 at 236-
23  38 (hereafter, the "Manual").

24        The purpose of preliminary approval is for the Court to determine whether the
25  parties should notify the putative class members of the proposed settlement and
26  proceed with a fairness hearing.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d
27  at 1079.  Notice of a settlement should be disseminated where "the proposed

28

settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (*quoting* NEWBERG ON CLASS ACTIONS § 11.25 (1992)).  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See Dunk v. Ford Motor Company*, 48 Cal. App. 4th 1794, 1801 (1996).

Nevertheless, a review of the standards applied in determining whether a settlement should be given *final* approval is helpful to the determination of preliminary approval.  One such standard is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)).

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, however, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate.  *See In re Syncor* 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT*

*Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.

In evaluating preliminarily the adequacy of a proposed settlement, particular attention should be paid to the process of settlement negotiations.  Here, the negotiations were conducted by experienced class action counsel.  Thus, counsel's assessment and judgment are entitled to a presumption of reasonableness, and the Court is entitled to rely heavily upon their opinion.  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

## IV.  THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  When making this determination, the Ninth Circuit has instructed district courts to balance several factors:  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026;[3] *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, the balance of these factors readily establishes that the proposed settlement should be preliminarily approved.

---

[3] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

## A.    Strength Of The Plaintiff's Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, Plaintiff's counsel engaged in lengthy arm's-length negotiations with Trader Joe's counsel, and were thoroughly familiar with the applicable facts, legal theories, and defenses. Although Plaintiff and her counsel believe that Plaintiff's claims have merit, they also recognize that they will face risks at class certification, summary judgment, and trial. Trader Joe's would no doubt present a vigorous defense at trial, and there is no assurance that the class would prevail. Thus, in the eyes of Plaintiff's counsel, the proposed Settlement provides the Settlement Class with an outstanding opportunity to obtain significant relief at this early stage in the litigation. The Settlement Agreement also abrogates the risks that might prevent them from obtaining relief.

## B.    Risk Of Continuing Litigation

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiff, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff

class."). Even assuming that Plaintiff were to survive summary judgment, she would face the risk of establishing liability at trial in light of conflicting expert testimony between their own expert witnesses and Trader Joe's expert witnesses. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury. The experience of Plaintiff's counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

Moreover, even if Plaintiff were to prevail at trial, the class would face additional risks if Trader Joe's appeals or moves for a new trial. For example, in *In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial. Based on the jury's findings, recoverable damages would have exceeded $100 million. However, weeks later, the trial judge overturned the verdict, entering judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant. By settling, Plaintiff and the Settlement Class avoid these risks, as well as the delays and risks of the appellate process.

## C.   Risk Of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiff would also face risks in certifying a class and maintaining that class status through trial. Even assuming that the Court were to grant a motion for class certification, the class could still be decertified at any time. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Plaintiff's counsel anticipates that Trader Joe's would likely move for reconsideration, attempt to appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date. Here, the Settlement Agreement eliminates these risks by ensuring Settlement Class Members a recovery

1   that is "certain and immediate, eliminating the risk that class members would be left

2   without any recovery … at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS

3   29042, at *8 (N.D. Cal. Mar. 5, 2010).

4       **D.    The Extent Of Discovery And Status Of Proceedings**

5       Under this factor, courts evaluate whether class counsel had sufficient

6   information to make an informed decision about the merits of the case. *See In re*

7   *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Here, this matter has

8   progressed through fact discovery more than sufficiently.  Accordingly, as discussed

9   above, Plaintiff's counsel has received, examined, and analyzed information,

10  documents, and materials that enabled them to assess the likelihood of success on the

11  merits.  These efforts include extensive consultations with experts from NOAA,

12  reviewing and analyzing test results regarding hundreds of tuna cans, numerous

13  interviews with members of the putative class, and significant legal research, analysis

14  of documents and evidence provided by Trader Joe's, and lengthy negotiations.

15      **E.    Experience And Views Of Counsel**

16      "The recommendations of plaintiffs' counsel should be given a presumption of

17  reasonableness." *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D.

18  Cal. 2008).  Deference to Plaintiff's counsel's evaluation of the Settlement is

19  appropriate because "[p]arties represented by competent counsel are better positioned

20  than courts to produce a settlement that fairly reflects each party's expected outcome

21  in litigation." *Rodriguez*, 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig.*, 47

22  F.3d 373, 378 (9th Cir. 1995)).

23      Here, the Settlement was negotiated by counsel with extensive experience in

24  consumer class action litigation, including extensive experience litigating consumer

25  claims regarding allegedly underfilled canned tuna. *See* Fisher Decl. Ex. 4 (firm

26  resume of Bursor & Fisher, P.A.).  Based on their collective experience, Class

27  Counsel concluded that the Settlement Agreement provides exceptional results for the

28

Settlement Class while sparing Settlement Class Members from the uncertainties of continued and protracted litigation.

## V.   THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS FOR THE PURPOSES OF PRELIMINARY APPROVAL

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  In assessing those class certification requirements, a court may properly consider that there will be no trial.  *Amchem,* 521 US at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

The Settlement Class consists of "All persons in the United States who purchased Trader Joe's Tuna (*i.e.*, 5 oz. Trader Joe's Albacore Tuna in Water Salt Added, 5 oz. Trader Joe's Albacore Tuna in Water Half Salt, 5 oz. Trader Joe's Albacore Tuna in Water No Salt Added, 5 oz. Trader Joe's Albacore Tuna in Olive Oil Salt Added, 5 oz. Trader Joe's Skipjack Tuna in Water With Sea Salt, and 5 oz. Trader Joe's Yellowfin Tuna in Olive Oil Solid Light) from January 5, 2012 through the date on which class notice is disseminated."  Excluded from this definition are (a) the Defendants and all of Defendants' past and present respective parents, subsidiaries, divisions, affiliates, persons and entities directly or indirectly under its or their control in the past or in the present; (b) Defendants' respective assignors, predecessors, successors, and assigns; (c) all past or present partners, shareholders, managers, members, directors, officers, employees, agents, attorneys, insurers, accountants, and representatives of any and all of the foregoing; (d) Defendants'

1   manufacturers, distributors, and suppliers of the Trader Joe's Tuna Products; and

2   (e) all persons who file a timely Request for Exclusion from the Settlement Class.

3        This Court has not yet certified this case as a class action.  For the reasons

4   below, the Class meets the requirements of Rule 23(a) and (b).  For settlement

5   purposes, the parties and their counsel request that this Court provisionally certify the

6   Settlement Class.

7        **A.     The Class Satisfies Rule 23(a)**

8             *1.     Numerosity*

9        Rule 23(a)(1) requires that "the class is so numerous that joinder of all members

10  is impracticable." *See* Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have

11  found that numerosity is satisfied when class size exceeds 40 members, but not

12  satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649,

13  654 (C.D. Cal. 2000).  Here, the proposed Settlement Class is comprised of millions

14  of consumers who purchased the Trader Joe's Tuna Products – a number that

15  obviously satisfies the numerosity requirement.  Accordingly, the proposed Settlement

16  Class is so numerous that joinder of their claims is impracticable.

17            *2.     Commonality*

18       Rule 23(a)(2) requires the existence of "questions of law or fact common to the

19  class." *See* Fed R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class

20  members' claims "depend on a common contention," "capable of class-wide

21  resolution … meaning that determination of its truth or falsity will resolve an issue

22  that is central to the validity of each one of the claims in one stroke." *Wal-Mart*

23  *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Because the commonality

24  requirement may be satisfied by a single common issue, it is easily met.  H. Newberg

25  & Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992).

26       There are ample issues of both law and fact that are common to the members of

27  the Settlement Class.  Indeed, all of the Settlement Class Members' claims arise from

28

---

a common nucleus of facts and are based on the same legal theories.  By way of example, the Plaintiff alleges that the Defendants underfilled their tuna products, and regularly failed to comply with the minimum federal pressed weight standards for 5 oz. cans of tuna.  Commonality is satisfied by the existence of these common factual issues.  *See Arnold v. United Artists Theatre Circuit, Inc.* 158 F.R.D. 439, 448 (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common … practices").

Second, Plaintiff's claims are brought under legal theories common to the Settlement Class as a whole.  Alleging a common legal theory alone is enough to establish commonality.  *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").  Here, all of the legal theories asserted by Plaintiff are common to all Settlement Class Members.  Given that there are no issues of law identified by either party which would tend to affect only individual members of the Settlement Class, common issues of law clearly predominate over individual ones.  Thus, commonality is satisfied.

### 3.   *Typicality*

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims … of the class."  *See* Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *See Hanlon*, 150 F.3d at 1020.  In short, to meet the typicality requirement, the representative Plaintiff simply must demonstrate that the members of the Settlement Class have the same or similar grievances.  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

The claims of the named Plaintiff are typical of those of the Settlement Class.

Like those of the Settlement Class, Plaintiff's claims arise out of the purchase of the Defendants' tuna products and the alleged underfilling of those products.  That is, Plaintiff Reyes purchased several of Defendants' tuna products and was directly impacted by the allegedly underfilled cans.  Plaintiff Reyes has precisely the same claims as the Settlement Class, and must satisfy the same elements for her claims, as must other Settlement Class Members.  Supported by the same legal theories, the named Plaintiff and all Settlement Class Members share claims based on the same alleged course of conduct.  The named Plaintiff and all Settlement Class Members have been injured in the same manner by this conduct. Therefore, Plaintiff Reyes satisfies the typicality requirement.

### 4.   *Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class."  *See* Fed. R. Civ. P. 23(a)(4).  A plaintiff will adequately represent the interests of the class where:  (1) plaintiffs and their counsel do not have conflicts of interest with other class members, and (2) where plaintiffs and their counsel prosecute the action vigorously on behalf of the class.  *See Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).  Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-length.  2 *Newberg on Class Actions, supra,* § 11.28, at 11-59.

Class Counsel have vigorously and competently pursued the Settlement Class Members' claims.  The arm's-length settlement negotiations that took place over several months and the detailed and comprehensive investigation they undertook demonstrate that Class Counsel adequately represent the Settlement Class.  Moreover, the named Plaintiff and Class Counsel have no conflicts of interest with the Settlement Class.  Rather, the named Plaintiff, like each absent Settlement Class Member, has a strong interest in proving Defendants' course of conduct and in obtaining redress.  In pursuing this litigation, Class Counsel, as well as the named Plaintiff, have advanced

1  and will continue to advance and fully protect the common interests of all members of

2  the Settlement Class.  Class Counsel has demonstrated an extensive experience and

3  expertise in prosecuting complex class actions, consumer class actions, and

4  specifically class actions involving underfilled cans of tuna.  Class Counsel are active

5  practitioners who are highly experienced in class action, product liability and

6  consumer fraud litigation.  *See* Fisher Decl. Ex. 4 (firm resume of Bursor & Fisher,

7  P.A.).  Accordingly, Rule 23(a)(4) is satisfied.

8      **B.      The Class Satisfies Rule 23(b)(3)**

9          In addition to meeting the prerequisites of Rule 23(a), Plaintiff must also meet

10  one of the three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v.*

11  *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Under Rule 23(b),

12  a class action may be maintained if "the court finds that the questions of law or fact

13  common to the members of the class predominate over any questions affecting only

14  individual members, and that a class action is superior to other available methods for

15  fairly and efficiently adjudicating the controversy."  *See* Fed. R. Civ. P. 23(b)(3).

16  Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the

17  parties can be served best by settling their differences in a single action."  *Hanlon*, 150

18  F.3d at 1022.

19          *1.    Common Questions Of Law And Fact Predominate*

20          The proposed Settlement Class is well-suited for certification under Rule

21  23(b)(3) because questions common to the Settlement Class Members predominate

22  over questions affecting only individual Settlement Class Members.  Predominance

23  exists "[w]hen common questions present a significant aspect of the case and they can

24  be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at

25  1022.  As the U.S. Supreme Court has explained, when addressing the propriety of

26  certification of a settlement class, courts take into account the fact that a trial will be

27  unnecessary and that manageability, therefore, is not an issue.  *Amchem*, 521 U.S. at

28

1  620.

2         In this case, common questions of law and fact exist and predominate over any

3  individual questions, including in addition to whether this Settlement is reasonable

4  (*see Hanlon*, 150 F.3d at 1026–27), *inter alia*:  (1) whether Defendants'

5  representations regarding the Trader Joe's Tuna Products were false and misleading or

6  reasonably likely to deceive consumers; (2) whether the Trader Joe's Tuna Products

7  were underfilled; (3) whether Defendants violated the CLRA, UCL, or FAL; (4)

8  whether Defendants breached an implied warranty; (5) whether Defendants had

9  defrauded Plaintiff and Settlement Class Members; (6) whether the Defendants were

10  unjustly enriched in regards to the products at issue; and (7) whether Plaintiff and the

11  Settlement Class have been injured by the wrongs complained of, and if so, whether

12  Plaintiff and the Settlement Class are entitled to damages, injunctive and/or other

13  equitable relief, including restitution or disgorgement, and if so, the nature and

14  amount of such relief.

15         Furthermore, the Court may readily certify a nationwide settlement class, given

16  that Plaintiff's complaint brings a claim for unjust enrichment (among other causes of

17  action.  Indeed, the law of unjust enrichment is uniform throughout the United States.

18  "There is general agreement among courts that the 'minor variations in the elements

19  of unjust enrichment under the laws of the various states … are not material and do

20  not create an actual conflict.'"  *In re Checking Account Overdraft Litig.*, 307 F.R.D.

21  656, 675 (S.D. Fla. 2015) (quoting *Pennsylvania Emp. Benefit Trust Fund v. Zeneca,

22  Inc.*, 710 F. Supp. 2d 458, 477 (D. Del. 2010)); *see also, e.g.*, *In re Abbott

23  Laboratories Norvir Anti-Trust Litig.*, 2007 WL 1689899, at *9-10 (N.D. Cal. 2007)

24  (certifying nationwide unjust enrichment class because "the variations among some

25  states' unjust enrichment laws do not significantly alter the central issue or the manner

26  of proof").  "Application of the unjust enrichment doctrine has a 'universal thread,' …

27  and the claim is well-suited for multi-state class treatment by virtue of its uniform

28

1  availability and focus on the defendant's ill-gotten gain." *In re Checking Account*

2  *Overdraft Litig.*, 307 F.R.D. at 675 (citation omitted).

3  Specifically, a claim for unjust enrichment requires proof of "(1) receipt of a

4  benefit; and (2) the unjust retention of the benefit at the expense of another." *Shum v.*

5  *Intel Corp.*, 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009). The essential inquiry in

6  any action for unjust enrichment is "the retention of the benefit is unjust" given "the

7  circumstances of its receipt." *Id.* This claim is therefore susceptible to common

8  proofs described above. *See In re Abbott Laboratories Norvir Anti-Trust Litig.*, 2007

9  WL 1689899, at *9-10; *see also In re Amla Litig*, 282 F. Supp. 3d 751, 768 (S.D.N.Y.

10  2017) ("Plaintiffs have therefore shown that common issues predominate as to their

11  unjust enrichment claims.").

12  
13  ## 2.   *A Class Action Is The Superior Mechanism For Adjudicating This Dispute*

14  The class mechanism is superior to other available means for the fair and

15  efficient adjudication of the claims of the Settlement Class. Each individual

16  Settlement Class Member may lack the resources to undergo the burden and expense

17  of individual prosecution of the complex and extensive litigation necessary to

18  establish Defendants' liability. Individualized litigation increases the delay and

19  expense to all parties and multiplies the burden on the judicial system presented by the

20  complex legal and factual issues of this case. Individualized litigation also presents a

21  potential for inconsistent or contradictory judgments. In contrast, the class action

22  device presents far fewer management difficulties and provides the benefits of single

23  adjudication, economy of scale, and comprehensive supervision by a single court.

24  Moreover, since this action will now settle, the Court need not consider issues

25  of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a

26  request for settlement-only class certification, a district court need not inquire whether

27  the case, if tried, would present intractable management problems, see Fed. Rule Civ.

28  Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Accordingly, common

1  questions predominate and a class action is the superior method of adjudicating this

2  controversy.

3  **VI.   THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE**
4         **NOTICE AND SHOULD BE APPROVED**

5         Once preliminary approval of a class action settlement is granted, notice must

6  be directed to class members.  For class actions certified under Rule 23(b)(3),

7  including settlement classes like this one, "the court must direct to class members the

8  best notice that is practicable under the circumstances, including individual notice to

9  all members who can be identified through reasonable effort."  Fed. R. Civ. P.

10  23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and requires the

11  Court to "direct notice in a reasonable manner to all class members who would be

12  bound by a proposal."  Fed. R. Civ. P. 23(e)(1).

13         When a court is presented with a class-wide settlement prior to the certification

14  stage, the class certification notice and notice of settlement may be combined in the

15  same notice.  *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule

16  23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows the

17  settlement class members to decide whether to opt out, participate in the class, or

18  object to the settlement.  *Id.*

19         The requirements for the content of class notices for (b)(3) classes are specified

20  in Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  Each of the proposed forms of notice, including

21  the Long Form and Short Form notices, meet all of these requirements, as detailed in

22  the following table:

23

24
| Requirement | Long Form | Short Form |
|---|---|---|
| "The nature of the action." Fed. R. Civ. P. 23(c)(2)(B)(i). | First introductory bullet; Q&A nos. 2 and 5. | Col. 1, ¶ 1. |

25

26

27

28

| Requirement | Long Form | Short Form |
|---|---|---|
| "The definition of the class certified."  Fed. R. Civ. P. 23(c)(2)(B)(ii). | Second introductory bullet; Q&A no. 4. | Col. 1, ¶ 2. |
| "The class claims, issues, or defenses."  Fed. R. Civ. P. 23(c)(2)(B)(iii). | First introductory bullet; Q&A nos. 2, 5 and 6. | Col. 1, ¶ 1. |
| "That a class member may enter an appearance through an attorney if the member so desires."  Fed. R. Civ. P. 23(c)(2)(B)(iv). | Q&A nos. 16, 17, 18, and 19. | Col. 2, ¶ 3. |
| "That the court will exclude from the class any member who requests exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(v). | Table of "Your Legal Rights and Options;" Q&A nos. 11, 12 and 13. | Col. 2, ¶ 2. |
| "The time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(vi). | Q&A no. 13. | Col. 2, ¶ 2. |
| "The binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B)(vii). | Table of "Your Legal Rights and Options"; Q&A nos. 11, 12, and 24. | Col. 1, ¶ 5. |

In addition to meeting the specific legal requirements of Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii), the proposed notices are based on the Federal Judicial Center's ("FJC") model forms for notice of pendency of a class action.  FJC prepared these models at the request of the Subcommittee on Class Actions of the U.S. judicial branch's Advisory Committee on the Federal Rules of Civil Procedure.  *See* www.fjc.gov.  The FJC models are designed to illustrate how attorneys and judges might comply with Fed. R. Civ. P. 23(c)(2)(B)'s requirement that class action notices "must concisely and clearly state in plain, easily understood language" specific information about the nature and terms of a class action and how it might affect

potential class members' rights. *See* www.fjc.gov. FJC explained its methodology

for preparing these models as follows:

> We began this project by studying empirical research and
> commentary on the plain language drafting of legal
> documents. We then tested several notices from recently
> closed class actions by presenting them to nonlawyers,
> asking them to point out any unclear terms, and testing their
> comprehension of various subjects. Through this process,
> we identified areas where reader comprehension was low.
> We found, for example, that nonlawyers were often
> confused at the outset by use of the terms "class" and "class
> action." Combining information from the pilot test with
> principles gleaned from psycholinguistic research, we
> drafted preliminary illustrative class action notices and
> forms. We then asked a lawyer-linguist to evaluate them for
> readability and redrafted the notices in light of his
> suggestions.

*Id.* FJC then tested the redrafted model notices "before focus groups composed of

ordinary citizens from diverse backgrounds" and also through surveys "[u]sing

objective comprehension measures." *Id.*

Based on FJC's testing, the Plaintiff and Class Counsel believe that each of the

proposed class notices, which are very closely based on FJC models, with the format

and content adopted almost verbatim in most instances, are accurate, balanced, and

comprehensible.

These notices will be disseminated through a media plan developed by

Kurtzman Carson Consultants ("KCC"), a firm with experience administering more

than 2,000 settlements, which has been chosen by the parties as the Settlement

Administrator. *See* Settlement Agreement ¶ 1.19, Fisher Decl. Ex. 1; Peak Decl. ¶ 3

("Since 1984, KCC has administered more than 6,000 matters and distributed

settlement payments totaling well over $20 billion in assets."). KCC's proposed

notice plan includes creation of a dedicated settlement website, an Internet banner ad

campaign, and print publication in *National Geographic*, the *New York Times*, and the

*Los Angeles Daily News*, which will reach "approximately 70% of likely Class

Members."  Peak Decl. ¶¶ 8-13.  KCC advises that this notice plan is "consistent with

the 70-95% reach guideline set forth in the Federal Judicial Center's *Judges' Class

Action Notice and Claims Process Checklist and Plain Language Guide*, which

considers 70-95% reach among class members reasonable."  *Id.* ¶ 14.  KCC estimates

that its services in providing notice and claims administration will cost $357,953.  *See*

Settlement Agreement ¶ 4.5, Fisher Decl., Ex. 1.

This proposed method of giving notice was developed by KCC, in collaboration

with Class Counsel, with the objective of ensuring that as much of the Settlement

Fund as possible will be distributed to Settlement Class Members in the most simple

and expedient manner.  *See, e.g.*, William B. Rubenstein, Newberg on Class Actions §

12:35 (5th ed. 2014) ("[A] court's goal in distributing class action damages is to get as

much of the money to the class members in as simple a manner as possible."); *see also

id.* § 12:15 ("The goal of any distribution method is to get as much of the available

damages remedy to class members as possible and in as simple and expedient a

manner as possible.").  With claim amounts at $29, it will take approximately 17,300

Cash Claims to exhaust the Cash Settlement Fund, and Class Counsel has asked KCC

to design the notice and claims process to accomplish this objective.  Fisher Decl.

¶ 13.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve

the Settlement Agreement, provisionally certify the Settlement Class for the purposes

of preliminary approval, approve the proposed notice plan, and enter the [Proposed]

Order Granting Motion for Preliminary Approval of Class Action Settlement,

submitted herewith.

Dated:  September 14, 2018

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  ___ */s/ L. Timothy Fisher* ___
L. Timothy Fisher

 L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Email:  scott@bursor.com

*Interim Class Counsel*