**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
E-Mail:  scott@bursor.com

*Interim Class Counsel*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Trader Joe's Tuna Litigation* | Case No. 2:16-cv-01371-ODW-AJW<br><br>**DECLARATION OF L. TIMOTHY FISHER IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  October 22, 2018<br>Time:  1:30 p.m.<br>Courtroom:  5D, 5th Floor<br>Judge:  Hon. Otis D. Wright II |

I, L. Timothy Fisher, declare as follows:

1. I am an attorney at law licensed to practice in the State of California. I am a member of the bar of this Court, and I am a partner at Bursor & Fisher, P.A., counsel for Plaintiff in this action. I make this declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

2. Attached hereto as **Exhibit 1** is a true and correct copy of the Stipulation for Class Action Settlement.

**Class Counsel's Investigation and Experience**

3. My firm was Class Counsel in *Hendricks v. StarKist Co.*, No. 13-cv-00729-HSG (N.D. Cal.) (the "*StarKist* Action"), which concerned similar allegations that certain varieties of StarKist-brand canned tuna were underfilled when measured precisely according to the methods specified by 21 C.F.R. § 161.190(c). In the *StarKist* Action, the parties agreed to a settlement valued at $12 million and received over 2.4 million claims, the largest number of submitted claims at the time from class members in the history of class actions. The settlement in the *StarKist* Action was the first of its kind. In fact, my firm is the only law firm that has ever successfully litigated claims involving the underfilling of canned tuna to resolution. Attached hereto as **Exhibit 2** is a true and correct copy of the July 23, 2015 Order Granting Preliminary Approval to the settlement in the *StarKist* Action.[1]

---

[1] In fact, based on the firm's performance in the StarKist Action, Judge Haywood S. Gilliam, Jr. found that an award of attorneys' fees of "30% of the total recovery, or $3.6 million, [wa]s appropriate" for Bursor & Fisher. When making this award, the StarKist court acknowledged that it was "an upward departure from the 25% benchmark" set by the Ninth Circuit as a "starting point" for attorneys' fees in common fund settlements. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). That said, the StarKist court concluded that such a departure was warranted given the "favorable" terms of the settlement, the risks of litigation, and the financial burden carried by Bursor & Fisher.

DECLARATION OF L. TIMOTHY FISHER
CASE NO. 2:16-CV-01371-ODW-AJW

1

4. Since entering into the settlement in the *StarKist* Action, my firm brought this action and two other additional cases concerning the alleged underfilling of canned tuna: *Soto v. Wild Planet Foods, Inc.*, 15-cv-05082-BLF (N.D. Cal.) (the "*Wild Planet* Action"); and *Soto v. Safeway, Inc.,* 15-cv-05078-EMC (N.D. Cal.) (the "*Safeway* Action"). The *Wild Planet* Action concerned allegations that Wild Planet and Sustainable Seas-brand canned tuna were underfilled. On November 21, 2016, prior to a ruling on the defendant's motion to dismiss, the parties settled the *Wild Planet* Action on a nationwide basis, comprising of a common fund in the amount of $1.7 million. Attached hereto as **Exhibit 3** is a true and correct copy of the May 12, 2017 Order Granting Preliminary Approval to the settlement in the *Wild Planet* Action.

5. Similarly, the *Safeway* Action concerned allegations that Safeway-brand canned tuna was underfilled. On March 1, 2017, prior to a ruling on the defendant's motion to dismiss, the parties resolved the *Safeway* matter to their mutual satisfaction.

6. Attached hereto as **Exhibit 4** is a true and correct copy of the firm resume of Bursor & Fisher, P.A.

7. Plaintiff engaged in formal and informal factual discovery over a period of several months with Trader Joe's, exchanging detailed data and analytics regarding Trader Joe's pressed weight testing, as well as nationwide wholesale and retail sales data regarding the Trader Joe's Tuna Products. Plaintiff also commissioned the services of the U.S. National Oceanic and Atmospheric Administration ("NOAA") for a series of pressed weight tests over a period of several months, which included consultations with experts from NOAA regarding the test data and its reliability. Because Plaintiff had the benefit of Class Counsel's experience in the *StarKist* Action, the *Wild Planet* Action, and the *Safeway* Action, Plaintiff was able to substantially streamline the fact-gathering process, which, in

1 light of Trader Joe's cooperation and production of necessary documentation and the test data obtained from NOAA, resulted in an efficient resolution without protracted litigation.

8. Specifically, on November 22, 2017, the Parties exchanged discovery requests. Specifically, Plaintiff Reyes served interrogatories and requests for production on Trader Joe's. That same day, Trader Joe's served requests for production on Plaintiff Reyes.

9. On December 22, 2017, the Parties served their written discovery responses. Plaintiff Reyes made her first document production on January 2, 2018. Trader Joe's made their first document production on January 19, 2018. Trader Joe's made a subsequent document productions on May 11, 2018 and May 21, 2018s.

10. On March 1, 2018, Plaintiff Reyes served a subpoena on a third-party, Tri Union Seafoods, LLC ("Tri-Union"). On April 13, 2018, Tri-Union made its first document production. Tri Union made a subsequent document production on April 20, 2018.

11. On May 14, 2018, Plaintiff served a notice of deposition pursuant to Rule 30(b)(6) on Trader Joe's. On May 16, 2018, Plaintiff Reyes served an additional five deposition notices for various employees of Trader Joe's.

12. On July 9, 2018, following months of informal negotiations, the Parties attended an in-person mediation, where they executed a binding Class Action Settlement Term Sheet, subject to approval of the Court.

**The $29 Claim Amount**

13. Based on my experience and review of dozens of class action settlements involving relatively low dollar value products, I have observed that claim rates are often too low to fully exhaust the settlement funds made available to class members. Thus, in the judgment of Class Counsel, it is critical that the individual claim amount be high enough to convince Settlement Class Members that it is worth

their time and effort to file a claim. Accordingly, we set the claim amount at $29 in cash because that amount is within the range of recoverable damages for most Settlement Class Members and is sufficiently high to incentivize Settlement Class Members to take the time to actually submit a claim. At these levels, Class Counsel project that it will take approximately 17,300 claims to exhaust the Settlement Fund, and we have asked KCC, the Settlement Administrator, to design the notice and claims process to accomplish this objective.

14. Based on my experience, I have observed that claim rates are higher where the claim procedures are simpler and lower where the claim procedures are more complex. With this in mind, Class Counsel opted for the simplest payout formula: a flat amount.

**The Proposed Notice Plan and Claim Procedure**

15. Recognizing that people ordinarily do not save grocery store receipts, Class Counsel insisted on a claims procedure that did not require proof of purchase other than by affidavit under penalty of perjury. In evaluating notice and claims administration proposals from Settlement Administrators, Class Counsel insisted on robust notice programs, relying heavily on Internet and social media advertising together with a print component in a nationally-circulated newspaper and magazine, with links to a dedicated settlement website to accommodate online claim filing. In Class Counsel's experience, an online claims process is essential, and when it is available, roughly 99% of claims are filed online rather than in paper form. KCC was selected as the Settlement Administrator because, in the judgment of Class Counsel, KCC provided an effective strategy to facilitate online claims filing – prompted by Internet and social media advertising – that was most likely to accomplish our goals, at a reasonable price. KCC also handled claims administration in the *StarKist* Action and the *Wild Planet* Action. KCC estimates that its services in providing notice and claims administration will cost approximately $357,953.

DECLARATION OF L. TIMOTHY FISHER    4
CASE NO. 2:16-CV-01371-ODW-AJW

1  16. Attached hereto as **Exhibits 5-6** are true and correct copies of the
2  proposed Long Form and Short Form notices.
3  I declare under the penalty of perjury under the laws of the State of California
4  and the United States that the foregoing is true and correct and that this declaration
5  was executed at Walnut Creek, California this 14th day of September, 2018.

*/s/ L. Timothy Fisher*
L. Timothy Fisher