**O**

# United States District Court
# Central District of California

| | |
|---|---|
| *In re Trader Joe's Tuna Litigation* | Case № 2:16-cv-01371-ODW (AJWx) |
| | **ORDER DENYING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITHOUT PREJUDICE [90]** |

## I.    INTRODUCTION

Plaintiff Atzimba Reyes, on behalf of herself and others similarly situated, alleges that Defendants, Trader Joe's Company and Trader Joe's East, Inc. (collectively, "Defendants"), underfilled certain 5-ounce canned tuna products.  Reyes, on behalf of the settlement class, and Defendants, on behalf of the suppliers of certain Trader Joe's 5-ounce canned tuna products, reached a stipulated settlement.  Reyes now moves, without opposition, for preliminary approval of the class action settlement.  (Mot. for Prelim. Approval of Class Action Settlement ("Mot."), ECF No. 90-1.)  For the reasons discussed below, the Court **DENIES** the Motion.[1]  (ECF No. 90.)

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Beginning in early 2016, several plaintiffs initiated various actions against Defendants alleging Defendants underfilled certain 5-ounce canned tuna products. (Mot. 4–7; Decl. of L. Timothy Fisher ("Fisher Decl.") Ex. 1 ("Stipulated Settlement Agreement" or "SSA") ¶¶ A–F, ECF No. 90-3.) The various plaintiffs initiated the actions in New York (*Magier v. Trader Joe's Co.*, No. 1:16-cv-99943 (S.D.N.Y. filed Jan. 5, 2016)), California (*Joseph v. Trader Joe's Co.*, 2:16-cv-01371-ODW-AJW (C.D. Cal. filed Feb. 26, 2016); *Shaw v. Trader Joe's Co.*, 2:16-cv-02686-ODW-AJW (C.D. Cal. filed Apr. 19, 2016)), and Illinois (*Aliano v. Trader Joe's Co.*, No. 1:16-cv-02623 (N.D. Ill. filed Feb. 26, 2016)). (SSA ¶¶ A–F.) In May 2016, the parties to these actions stipulated to venue in the Central District of California, and the actions were voluntarily transferred. (*Id.* ¶ G.) In November 2016, the Court consolidated the actions under the caption *In re Trader Joe's Tuna Litigation*, No. 2:16-cv-01371-ODW-AJW. (*Id.* ¶ H.) The Court appointed Plaintiffs Magier's and Reyes's counsel, Bursor & Fisher, P.A., as sole Interim Class Counsel. (*Id.* ¶ K.)

Following pleading amendments and motion practice, the Court dismissed Plaintiff Magier's claims in their entirety and certain claims in the Second Amended Complaint ("SAC"). (*Id.* ¶ Q; Order Granting, In Part, Defs.' Mot. to Dismiss ("Order MTD SAC"), ECF No. 68.) The only remaining claims are Plaintiff Reyes's claims for breach of implied warranty of merchantability, unjust enrichment, fraud, violation of California's Consumer Legal Remedies Act, violation of California's Unfair Competition Law, and violation of California's False Advertising Law. (SSA ¶ Q; *see* Order MTD SAC.)

The parties engaged in formal and informal discovery over a period of several months. (Mot. 7; SSA ¶¶ S–AA.) They exchanged "detailed data and analytics regarding Trader Joe's pressed weight testing, as well as nationwide wholesale and retail sales data regarding Trader Joe's Tuna Products." (Mot. 7.) Plaintiff commissioned the U.S. National Oceanic and Atmospheric Administration ("NOAA")

to complete pressed-weight testing and for expert consultation regarding test data. (*Id.*) After more than six months of informal negotiations and an in-person mediation, on July 9, 2018, the parties reached an agreement, subject to the Court's approval. (*Id.* at 8; SSA ¶ BB.)

Plaintiff now moves for preliminary approval of the class action settlement. (*See* Mot.) Specifically, Plaintiff requests that the Court: "(1) Grant preliminary approval of the proposed Settlement; (2) Provisionally certify the Settlement Class on a nationwide basis for the purposes of preliminary approval, designate Plaintiff Reyes as the Class Representative, and Bursor & Fisher, P.A. as Class Counsel for the Settlement Class; (3) Establish procedures for giving notice to members of the Settlement Class; (4) Approve forms of notice to Settlement Class Members; (5) Mandate procedures and deadlines for exclusion requests and objections; and (6) Set a date, time and place for a final approval hearing." (*Id.* at 2.)

### III.    PROPOSED SETTLEMENT TERMS

The parties executed a Stipulation for Class Action Settlement to reflect the compromise reached. (*See* SSA.) The key provisions follow.

### A.    Relevant Definitions

The Stipulated Settlement Agreement defines the proposed settlement class as "[a]ll persons in the United States who purchased Trader Joe's Tuna (defined below) from January 5, 2012 through the date on which class notice is disseminated." (SSA ¶ 1.20 (defining "Settlement Class" and "Settlement Class Members").) "Trader Joe's Tuna" or "Trader Joe's Tuna Products" is defined as "(i) 5-ounce canned Trader Joe's Albacore Tuna in Water Salt Added, (ii) 5-ounce canned Trader Joe's Albacore Tuna in Water Half Salt, (iii) 5-ounce canned Trader Joe's Albacore Tuna in Water No Salt Added, (iv) 5-ounce canned Trader Joe's Albacore Tuna in Olive Oil Salt Added, (v) 5-ounce canned Trader Joe's Skipjack Tuna in Water With Sea Salt, and (vi) 5-ounce canned Trader Joe's Yellowfin Tuna in Olive Oil Solid Light, purchased during the Settlement Class Period." (*Id.* ¶ 1.26.)

**B.    Settlement Fund**

The SSA provides that Defendants will pay $1.3 million in cash as the Settlement Fund, which is Defendants' total financial obligation, for payment of: valid claims of Settlement Class members; settlement administration costs which the proposed Settlement Administrator estimates to be $357,953 (over 25% of the entire settlement amount); check distribution costs; Attorneys' Fees and Costs to Class Counsel, not to exceed one-third (1/3) of the total Settlement Fund; and the Incentive Award, if any, to the Class Representative, not to exceed $5000.  (*Id.* ¶¶ 2.1, 3.1.)

Each Settlement Class Member who submits a valid claim will receive a flat rate cash award of $29, subject to dilution or inflation depending on the total number of claims submitted.  (*Id.* ¶¶ 2.3, 2.6, 2.8.)  The SSA provides that any funds from checks remaining uncleared after 180 days from issuance shall be donated to a charity agreed upon by Class Counsel, Defendants' Counsel, and the Settlement Administrator.  (*Id.* ¶ 2.7.)

A Settlement Class Member may submit a maximum of one claim on a Court-approved Claim Form, either online or through the mail, regardless of the number of Trader Joe's Tuna Products purchased.  (*Id.* ¶ 2.3.)  A Settlement Class Member must confirm under penalty of perjury the specific product purchased and that the purchase was made within the Settlement Class Period.  (*Id.*)  Although Plaintiff argues the proposed Settlement Class consists of potentially millions of consumers (*see* Mot. 15), the parties estimate that 17,300 valid claims will exhaust the Settlement Fund (*id.* at 24; Fisher Decl. ¶ 13).

**C.    Notice to Settlement Class**

The parties have selected KCC Class Action Services, LLC ("KCC"), as the Settlement Administrator.  (SSA ¶ 1.19; Fisher Decl. ¶ 15.)  KCC's proposed notice plan includes a dedicated settlement website and toll-free phone number, an Internet banner ad campaign, and print publication in *National Geographic*, the *New York Times*, and the *Los Angeles Daily News* (the "Media Plan").  (Mot. 23–24; Decl. of

Carla Peak ("Peak Decl.") ¶¶ 8–12, ECF No. 90-9.)  This Media Plan is expected to reach approximately 70% of likely Settlement Class Members.  (Mot. 24.)

The parties propose to distribute a short form and a long form class notice using the above described Media Plan.  (Mot. 22–24; Fisher Decl. ¶ 16, Exs. 5–6.)  Both notices inform potential Settlement Class Members that they may accept, object, or opt out of the settlement.  (Fisher Decl. Exs. 5–6.)  The notices describe the procedures a potential Settlement Class Member must follow for each action.  (*Id.*)  A Settlement Class Member may submit a claim online or by mail; the claim form will be available online at the Settlement Website or upon request in hard copy.  (*Id.* Ex. 5; *id.* Ex. 6, at 4; *see also* Suppl. Fisher Decl. Ex. 1 ("Claim Form"), ECF No. 94.)  Settlement Class Members may opt-out only by mailing a request for exclusion to a specified address with the requested information.  (*See* Fisher Decl. Ex. 6, at 5; *see also* Suppl. Fisher Decl. Ex. 2 ("Exclusion Request Form").)  The Exclusion Request Form will be available on the Settlement Website.  (Fisher Decl. Ex. 6, at 5.)  The class notice also informs potential class members how to object to the settlement or make an appearance.  (*See id.* Exs. 5–6.)  The full SSA will also be available on the Settlement Website, although the SSA does not provide that the anticipated motion for fees and incentive award will be similarly posted.  (*See id.* Ex. 6, at 8–9.)

**D.  Released Claims**

The SSA provides that Settlement Class Members who do not opt-out will release all claims:

> arising from the factual allegations and/or legal claims made in the Action, or arising from similar or related allegations, claims, or causes of action, including without limitation any allegations of false, misleading, or deceptive advertising or violation of the Consumers Legal Remedies Act, allegations of underfilling of Trader Joe's Tuna and/or any allegations of damages arising from the purchase of any Trader Joe's Tuna at any time on or after January 5, 2012 and prior to the time the Class is notified (collectively, the "Released Claims").

(SSA ¶ 6.1.)  Settlement Class Members "shall be deemed to have waived and

relinquished . . . [the] rights and benefits of California Civil Code section 1542" and equivalent provisions under other state or federal law. (*Id.*)

## IV. ANALYSIS

The Court must first address whether the class may be provisionally certified for settlement purposes before evaluating the fairness, adequacy, and reasonableness of the proposed settlement or reviewing the adequacy of the proposed class notice.

Class certification is a prerequisite to preliminary settlement approval. Class certification is appropriate only if each of the four requirements of Federal Rules of Civil Procedure ("Rule") 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997). Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Next, the proposed class must meet at least one of the requirements of Rule 23(b), as applicable here, Rule 23(b)(3): (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and/or (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Where class certification is sought for settlement purposes only, the certification inquiry still "demand[s] undiluted, even heightened, attention." *Amchem*, 521 U.S. at 620.

### A. Rule 23(a) Requirements

The proposed class meets all four Rule 23(a) factors. First, it is sufficiently numerous. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "[n]o exact numerical cut-off is required," "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal.

2009). The parties estimate the class size in this case is approximately 17,300 consumers. (Mot. 15, 24.) Thus, the class is sufficiently numerous.

Next, the claims of the potential class members demonstrate common questions of fact. *See* Fed. R. Civ. P. 23(a)(2); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("commonality only requires a single significant question of law or fact."). Even a single common contention is sufficient, provided it is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Here, the claims of Settlement Class Members are based on the same factual predicate as Plaintiff's, namely that Defendants underfilled Trader Joe's Tuna Products, and Settlement Class Members purchased them. The truth or falsity of the alleged underfilling will resolve an issue central to all claims. Thus, the allegation of underfilling and Defendants' defenses are questions common to all Settlement Class Members. As such, the class meets the commonality requirement.

Plaintiff also meets the typicality requirement. Typicality in this context means that the representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff's claims arise out of the same circumstances as those of the other class members, namely that Plaintiff purchased Defendants' underfilled Trader Joe's Tuna Products during the Settlement Class Period. (*See generally* SAC, ECF No. 55; Mot. 17.) Thus, Plaintiff is typical of the class she seeks to represent.

Finally, Plaintiff and her counsel satisfy the adequacy requirement for representing absent class members. This requirement is met where the named plaintiff and her counsel do not have conflicts of interest with other class members and will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020. No evidence suggests that Plaintiff or her counsel have a conflict of interest with other class

members. Additionally, the history of this action demonstrates that Plaintiff and her counsel have vigorously pursued this litigation. Finally, Plaintiff's counsel has experience prosecuting large consumer class actions, and specifically actions involving the very issues in dispute here, underfilling cans of tuna. (Mot. 17–18; Fisher Decl. Ex. 4 ("Firm Resume").) Accordingly, Plaintiff and her counsel satisfy the adequacy requirement.

**B.     Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 623). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* "[W]hether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809–10 (2011) (internal quotation marks omitted).

Although the SAC indicates a nationwide class and a California subclass, the SSA seeks provisional certification of only a nationwide class. (SAC ¶¶ 11, 19, 21; SSA ¶ 1.20.) Plaintiff's claims include breach of implied warranty of merchantability, unjust enrichment, fraud, violation of California's Consumer Legal Remedies Act, violation of California's Unfair Competition Law, and violation of California's False Advertising Law. (Mot. 7; Order MTD SAC.) "California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d

8

536, 541 (9th Cir. 2016) (quoting *Mazza*, 666 F.3d at 590) (internal quotation marks omitted).[2]

In *Mazza*, the Ninth Circuit determined that courts must conduct a "three-step governmental interest test" before a court may certify a nationwide class applying California law. *Id.* The test requires first, a determination of "whether the relevant law of each of the potentially affected jurisdictions" differs materially. *Mazza*, 666 F.3d at 590 (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (2010)). Second, where a material difference exists, "the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *Id.* Finally, where a true conflict exists, the court must compare each jurisdiction's interest in application of its own law "to determine which state's interest would be more impaired if its policy were subordinated." *Id.*

Here, Plaintiff fails to mention *Mazza*, let alone conduct the required analysis, despite seeking to apply California consumer protection laws to a nationwide class of purchasers across at least 40 states. *See id.* at 591, 592 (finding it an abuse of discretion to certify a nationwide class "under California law that contained class members who [made purchases] in different jurisdictions with materially different consumer protection laws.") Further, *Mazza* found "[t]he elements necessary to establish a claim for unjust enrichment also vary materially from state to state." *Id.* at 591. Plaintiff ignores this authority and instead cites non-binding authority that pre-dates *Mazza* to argue in favor of predominance that "the law of unjust enrichment is uniform through the United States." (Mot. 19.) Finally, Plaintiff fails to address the choice of law issue with respect to her breach of implied warranty and fraud claims.

---

[2] "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza*, 666 F.3d at 589 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001)).

Plaintiff does not address the choice of law issue or provide support for the notion that the types of concerns addressed in *Mazza* present no roadblock to certification for class settlement purposes.  Consequently, the Court cannot find the predominance requirement met so as to provisionally certify the class for settlement purposes.

As class certification is a prerequisite to preliminary settlement approval and the Court cannot provisionally certify the class, the Court does not address the fairness of the proposed settlement or adequacy of the proposed class notice.

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** the Motion for Preliminary Approval of Class Settlement **WITHOUT PREJUDICE.**  (ECF No. 90.)  The Court **GRANTS LEAVE TO REFILE within 60 days** of the date of this Order.

**IT IS SO ORDERED.**

April 1, 2019

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**