**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
E-Mail: scott@bursor.com

*Interim Class Counsel*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Trader Joe's Tuna Litigation* | Case No. 2:16-cv-01371-ODW-AJW |
| | **RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Date: September 16, 2019 |
| | Time: 1:30 p.m. |
| | Courtroom: 5D, 5th Floor |
| | Judge: Hon. Otis D. Wright II |

# TABLE OF CONTENTS

PAGE(S)

I.      INTRODUCTION ............................................................................. 1

II.     PROCEDURAL BACKGROUND ................................................... 5

    A.      Pleadings And Motions ........................................................ 5

    B.      Discovery .............................................................................. 8

III.    THE LEGAL STANDARD FOR PRELIMINARY APPROVAL .................. 9

IV.     THE COURT SHOULD PROVISIONALLY CERTIFY THE
       SETTLEMENT CLASS FOR THE PURPOSES OF
       PRELIMINARY APPROVAL ...................................................... 11

    A.      The Class Satisfies Rule 23(a) ............................................ 12

    B.      The Class Satisfies Rule 23(b)(3) ....................................... 12

        1.      *Common Questions Of Law And Fact Predominate* ................. 13

        2.      *A Class Action Is The Superior Mechanism For
            Adjudicating This Dispute* ........................................... 17

V.      THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE,
       AND REASONABLE ...................................................... 18

    A.      Strength Of The Plaintiff's Case ......................................... 19

    B.      Risk Of Continuing Litigation ............................................ 19

    C.      Risk Of Maintaining Class Action Status ........................... 20

    D.      The Extent Of Discovery And Status Of Proceedings ......... 21

    E.      Experience And Views Of Counsel ..................................... 21

VI.     THE PROPOSED NOTICE PROGRAM PROVIDES
       ADEQUATE NOTICE AND SHOULD BE APPROVED ............................. 22

VII.    CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alaniz v. California Processors, Inc.*,
   73 F.R.D. 269 (N.D. Cal. 1976) .................................................................. 9

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) .................................................................. 14

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................ 11, 16, 17, 18

*Apple Computer Sec. Litig.*,
   1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ......................... 20

*Beaver v. Alaniz*,
   439 U.S. 837 (1978) .................................................................................. 9

*Bernhard v. Harrah's Club*,
   16 Cal.3d 313 (1976) ............................................................................... 15

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) .......................................................... 11

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .................................................................... 18

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .......................................... 19

*Dunk v. Ford Motor Company*,
   48 Cal. App. 4th 1794 (1996) .................................................................. 10

*Fulford v. Logitech, Inc.*,
   2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ......................... 21

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................................... 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................... passim

*Harmsen v. Smith*,
    693 F.2d 932 (9th Cir. 1982) ................................................................... 15, 16

*In re Hyundai and Kia Fuel Economy Litig.*,
    2019 WL 2376831 (9th Cir. June 6, 2019) ........................................... passim

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................................ 21

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .............................................. 20

*In re Omnivision Techns., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 21

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................... 10, 21, 22, 24

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ..................................................... 9, 10, 14

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................ 9

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................................. passim

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................. 10, 19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................ 15

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) .................................................................. 15, 16

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) ............................................................................................ 10

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................. 19, 21

*Wash. Mut. Bank, FA v. Superior Court*,
    24 Cal.4th 906 (2001) ........................................................................................ 15

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001)................................................................12, 16

**STATUTES**

28 U.S.C. § 1404................................................................................................6

28 U.S.C. § 1407................................................................................................6

N.Y. Gen. Bus. Law § 349..............................................................................5, 7

N.Y. Gen. Bus. Law § 350..............................................................................5, 7

**RULES**

Fed. R. Civ. P. 23.............................................................................................11

Fed. R. Civ. P. 23(b)(3).............................................................13, 17, 18, 22

Fed. R. Civ. P. 23(c)(2)..............................................................................22, 23

Fed. R. Civ. P. 23(c)(3)....................................................................................23

Fed. R. Civ. P. 23(e)........................................................................................22

Fed. R. Civ. P. 23(e)(1)....................................................................................22

Fed. R. Civ. P. 23(e)(2)....................................................................................18

Fed. R. Civ. P. 23(f).........................................................................................21

Fed. R. Civ. P. 23(g)..........................................................................................6

**OTHER AUTHORITIES**

Manual for Complex Litigation, 3d Edition, § 30.41 ................................9, 22

Newberg on Class Actions § 11.25 (1992).......................................................9

William B. Rubenstein, Newberg on Class Actions § 12.35 (5th ed. 2014)...............25

# I.      INTRODUCTION

On April 1, 2019, the Court previously denied without prejudice Plaintiff's initial Motion for Preliminary Approval of Class Action Settlement.  *See* Dkt. 96. While the Court concluded that "[t]he proposed class meets all four Rule 23(a) factors," it nonetheless found that predominance was lacking under Rule 23(b)(3) because "Plaintiff fails to mention *Mazza* [*v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)], let alone conduct the required [choice of law] analysis, despite seeking to apply California consumer protection laws to a nationwide class of purchasers across at least 40 states."  4/1/19 Order at 9.  As such, the Court found that "Plaintiff does not address the choice of law issue <u>or provide support for the notion that the types of concerns addressed in *Mazza* present no roadblock to certification for class settlement purposes</u>."  *Id.* at 10.

Subsequent to the Court's April 1, 2019 Order, the Ninth Circuit, *en banc*, decided *In re Hyundai and Kia Fuel Economy Litig.*, 2019 WL 2376831 (9th Cir. June 6, 2019), which unambiguously makes clear that no such analysis is necessary in this matter.  Citing the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action[s] [are] concerned," the *en banc* panel announced its "default" rule that the laws of a single state may ordinarily be applied nationwide in a settlement context without any choice of law analysis.  *See Hyundai*, 2019 WL 2376831, at *9-10 ("[A] court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class."); *see also id.* ("By default, California courts apply California law unless a party litigant timely invokes the law of a foreign state, in which case it is the foreign law proponent who must shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims."); *id.* ("If the objectors fail to meet their burden at any step in the analysis, the district court may properly find California law applicable without proceeding to the rest of the analysis."); *id.* ("Neither the district court nor

class counsel were obligated to address choice-of-law issues beyond those raised by the objectors, and we will not decertify a class action for lack of such analysis."). The Ninth Circuit further found that "*Mazza* is readily distinguishable," as "the *Mazza* class was certified for litigation purposes." *Id.* Thus, in *Mazza*, "[t]he prospect of having to apply the separate laws of dozens of jurisdictions presented a significant issue for trial manageability, weighing against a predominance finding." *Id.* Here, such concerns are not present in the settlement context. *Id.*

As such, the Court should grant preliminary approval to the parties' proposed settlement. The Stipulation for Class Action Settlement ("Settlement Agreement")[1] states that Defendants Trader Joe's Company and Trader Joe's East Inc. (collectively, "Trader Joe's" or "Defendants"), on behalf of the suppliers of the Trader Joe's Tuna Products,[2] will pay $1.3 million into a Settlement Fund in cash for the settlement of all claims in this action. *See* Settlement Agreement ¶ 2.1, Fisher Decl. Ex. 1. The Settlement Agreement defines the Settlement Class to include:

> All persons in the United States who purchased Trader Joe's Tuna from January 5, 2012 through the date on which class notice is disseminated.

The Settlement Agreement includes a $29.00 per claim payout for Settlement Class Members, subject to pro rata dilution if the total amount of claims exceeds the available funds. Settlement Agreement ¶ 2.3(a), Fisher Decl. Ex. 1. This is an excellent result for Settlement Class Members compared to their likely recovery should they prevail at trial. That is, a recovery of $29 cash is a substantial portion of

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Settlement Agreement, filed concurrently herewith. *See* Fisher Decl. Ex. 1.

[2] As used in both the Settlement Agreement and in Plaintiff's operative Class Action Complaint, the terms "Trader Joe's Tuna" and "Trader Joe's Tuna Products" mean: (i) 5-ounce canned Trader Joe's Albacore Tuna in Water Salt Added, (ii) 5-ounce canned Trader Joe's Albacore Tuna in Water Half Salt, (iii) 5-ounce canned Trader Joe's Albacore Tuna in Water No Salt Added, (iv) 5-ounce canned Trader Joe's Albacore Tuna in Olive Oil Salt Added, (v) 5-ounce canned Trader Joe's Skipjack Tuna in Water With Sea Salt, and (vi) 5-ounce canned Trader Joe's Yellowfin Tuna in Olive Oil Solid Light.

the maximum recovery any Settlement Class Member could reasonably expect, considering the relatively low cost of a can of tuna, only a fraction of which is alleged to be underfilled.  Fisher Decl. ¶¶ 13-14.

As in any class action, the proposed Settlement is initially subject to preliminary approval and then to final approval by the Court after notice to the class and a hearing.  Plaintiff now requests that this Court enter an order in the form of the accompanying [Proposed] Order Granting Motion For Preliminarily Approval Of Class Action Settlement, which will:

    (1)    Grant preliminary approval of the proposed Settlement;

    (2)    Provisionally certify the Settlement Class on a nationwide basis for the purposes of preliminary approval, designate Plaintiff Reyes as the Class Representative, and Bursor & Fisher, P.A. as Class Counsel for the Settlement Class;

    (3)    Establish procedures for giving notice to members of the Settlement Class;

    (4)    Approve forms of notice to Settlement Class Members;

    (5)    Mandate procedures and deadlines for exclusion requests and objections; and

    (6)    Set a date, time and place for a final approval hearing.

The proposed Settlement is fair and reasonable and falls within the range of possible approval.  It is the product of extended arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case.  Class Counsel has conducted an extensive investigation into the facts and law relating to this matter and has engaged in lengthy and detailed informal discovery to confirm critical facts regarding the scope of the class, the volume of product sales, the role of suppliers, relevant labeling and advertising, and the relative values of Trader Joe's Tuna Products sold during the Settlement Class Period.  The investigation has

1   included commissioning pressed weight testing of Trader Joe's Tuna and reviewing

2   numerous pressed weight test reports in cooperation with qualified experts from the

3   U.S. National Oceanic and Atmospheric Administration ("NOAA").

4          Additionally, Bursor & Fisher is singularly experienced with the issues

5   particular to this action.  In *Hendricks v. StarKist Co*., No. 13-cv-00729-HSG (N.D.

6   Cal.) (the "*StarKist* Action"), Bursor & Fisher successfully resolved virtually identical

7   claims involving the alleged underfilling of StarKist-brand 5-ounce cans of tuna.  *See*

8   July 23, 2015 Order Granting Preliminary Approval, Ex. 2 to Fisher Decl.; *see also*

9   Bursor & Fisher Firm Resume, Ex. 4 to Fisher Decl.  In fact, Bursor & Fisher is the

10  only law firm that has ever successfully litigated claims involving the underfilling of

11  canned tuna to resolution.  Fisher Decl. at ¶ 3.  In the *StarKist* Action, the parties

12  agreed to a settlement valued at $12 million and received over 2.4 million claims, the

13  largest number of submitted claims at the time from class members in the history of

14  class actions.  *Id.*

15         Since entering into the settlement in the *StarKist* Action, Bursor & Fisher

16  brought this action and two other additional cases concerning the alleged underfilling

17  of canned tuna:  *Soto v. Wild Planet Foods, Inc.*, 15-cv-05082-BLF (N.D. Cal.) (the

18  "*Wild Planet* Action"); and *Soto v. Safeway, Inc.*, 15-cv-05078-EMC (N.D. Cal.) (the

19  "*Safeway* Action").  *Id.* at ¶ 4.  The *Wild Planet* Action concerned allegations that

20  Wild Planet and Sustainable Seas-brand canned tuna were underfilled.  *Id..*  On

21  November 21, 2016, prior to a ruling on the defendant's motion to dismiss, the parties

22  settled the *Wild Planet* Action on a nationwide basis, comprising of a common fund in

23  the amount of $1.7 million.  *Id..*, Ex. 3.  Similarly, the *Safeway* Action concerned

24  allegations that Safeway-brand canned tuna was underfilled.  On March 1, 2017, prior

25  to a ruling on the defendant's motion to dismiss, the parties resolved the *Safeway*

26  matter to their mutual satisfaction.  *See id.* at ¶ 4.

27

28

1    As a result of these efforts and the experience gained in litigating the *StarKist*

2    Action, the *Wild Planet* Action, and the *Safeway* Action, Class Counsel is fully

3    informed of the merits of the instant action and the proposed settlement, has

4    substantial experience in consumer litigation regarding underfilling of tuna cans and

5    has, as a result, been efficient in substantially streamlining the fact gathering process

6    so as to reach the proposed settlement promptly and without protracted litigation.  *Id.*

7    at ¶¶ 3-5.

8    **II.   PROCEDURAL BACKGROUND**

9         **A.   Pleadings And Motions**

10        On January 5, 2016, Plaintiff Sarah Magier commenced an action entitled

11   *Magier v. Trader Joe's Co.*, No. 1:16-cv-00043 (S.D.N.Y.), as a proposed class

12   action, asserting claims for breach of express warranty, breach of the implied

13   warranty of merchantability, breach of the implied warranty of fitness for a particular

14   purpose, unjust enrichment, violation of New York's General Business Law § 349,

15   violation of New York's General Business Law § 350, negligent misrepresentation,

16   and fraud.  At issue in the *Magier* matter were allegations that Trader Joe's

17   underfilled certain 5-ounce canned tuna products.

18        On January 29, 2016, Plaintiff Sarah Magier amended her operative complaint

19   to add the allegations of Plaintiff Atzimba Reyes.  In doing so, the amended *Magier*

20   complaint added claims for violation of California's Consumers Legal Remedies

21   Act, violation of California's Unfair Competition Law, and violation of California's

22   False Advertising Law.

23        On February 26, 2016, Plaintiff Amy Joseph commenced an action entitled

24   *Joseph v. Trader Joe's Co.*, 2:16-cv-01371-ODW-AJW (C.D. Cal.), as a proposed

25   class action.  At issue in the *Joseph* matter were allegations that Trader Joe's

26   Company underfilled certain 5-ounce canned tuna products.

27        On February 26, 2016, Plaintiff Kathy Aliano commenced an action entitled

28

*Aliano v. Trader Joe's Co.*, No. 1:16-cv-02623 (N.D. Ill.), as a proposed class action. At issue in the *Aliano* matter were allegations that Trader Joe's Company underfilled certain 5-ounce canned tuna products.

On March 11, 2016, Plaintiff Aliano filed a Motion for Coordination or Consolidation and Transfer Pursuant to 28 U.S.C. § 1407 (the "Motion for Coordination") with the United States Judicial Panel on Multidistrict Litigation (the "JPML"), seeking coordination of the *Aliano*, *Joseph*, and *Magier* matters.

On April 19, 2016, Plaintiff Christine Shaw commenced an action entitled *Shaw v. Trader Joe's Co.*, No. 2:16-cv-02686-ODW-AJW (C.D. Cal.), as a proposed class action.  At issue in the *Shaw* matter were allegations that Trader Joe's Company underfilled certain 5-ounce canned tuna products.

On May 26, 2016, counsel for the Parties appeared before the JPML and agreed to stipulate to a change of venue pursuant to 28 U.S.C. § 1404, such that the *Aliano*, *Joseph*, *Magier*, and *Shaw* matters "will be venued in the Central District of California."  Based on these representations, the JPML considered the Motion for Coordination to be withdrawn, in favor of voluntary transfer and coordination pursuant to 28 U.S.C. § 1404.

On November 1, 2016, following the Parties' voluntary transfer to the U.S. District Court for the Central District of California before Judge Otis D. Wright II, the Court ordered the *Aliano*, *Joseph*, *Magier*, and *Shaw* matters to be consolidated and thereafter captioned *In re Trader Joe's Tuna Litigation*, No. 2:16-cv-01371-ODW-AJW (C.D. Cal.) (the "Action").

On November 7, 2016, counsel for Plaintiffs Aliano, Joseph, and Shaw filed a Motion for Appointment of Interim Class Counsel, pursuant to Fed. R. Civ. P. 23(g). On November 7, 2016, counsel for Plaintiffs Magier and Reyes filed a competing Motion for Appointment of Interim Class Counsel.  On December 21, 2016, the Court appointed Plaintiffs Magier and Reyes' counsel, Bursor & Fisher, P.A., as sole

1   Interim Class Counsel.

2         On January 20, 2017, Plaintiffs Magier and Reyes filed the First Amended

3   Class Action Complaint in the consolidated *In re Trader Joe's Tuna Litigation*

4   matter, asserting claims for breach of express warranty, breach of the implied

5   warranty of merchantability, unjust enrichment, violation of New York's General

6   Business Law § 349, violation of New York's General Business Law § 350,

7   negligent misrepresentation, fraud, violation of California's Consumers Legal

8   Remedies Act, violation of California's Unfair Competition Law, and violation of

9   California's False Advertising Law.

10         On March 21, 2017, Trader Joe's moved to dismiss the First Amended Class

11   Action Complaint in the Action.  On June 2, 2017, the Court granted Trader Joe's

12   motion to dismiss, with leave to amend, based predominantly on preemption

13   grounds.

14         On June 30, 2017, Plaintiffs Magier and Reyes filed the Second Amended

15   Class Action Complaint in the Action.  On July 28, 2017, Trader Joe's moved to

16   dismiss the Second Amended Class Action Complaint in the Action.  On October 3,

17   2017, the Court granted in part and denied in part Trader Joe's motion to dismiss the

18   Second Amended Class Action Complaint.  Specifically, the Court dismissed

19   Plaintiff Magier's claims in their entirety as preempted.  As to Plaintiff Reyes, the

20   Court dismissed her claims for breach of express warranty and negligent

21   misrepresentation.  Accordingly, the remaining claims consist of Plaintiff Reyes'

22   claims for breach of the implied warranty of merchantability, unjust enrichment,

23   fraud, violation of California's Consumers Legal Remedies Act, violation of

24   California's Unfair Competition Law, and violation of California's False Advertising

25   Law.  On November 9, 2017, Trader Joe's filed its Answer to the Second Amended

26   Class Action Complaint.  On March 30, 2018, Trader Joe's filed an Amended

27   Answer to the Second Amended Class Action Complaint.

28

### B.     Discovery

Plaintiff engaged in formal and informal factual discovery over a period of several months with Trader Joe's, exchanging detailed data and analytics regarding Trader Joe's pressed weight testing, as well as nationwide wholesale and retail sales data regarding the Trader Joe's Tuna Products.  Fisher Decl. at ¶ 7.  Plaintiff also commissioned the services of NOAA for a series of pressed weight tests over a period of several months, which included consultations with experts from NOAA regarding the test data and its reliability.  *Id.*  Because Plaintiff had the benefit of Class Counsel's experience in the *StarKist* Action, the *Wild Planet* Action, and the *Safeway* Action, Plaintiff was able to substantially streamline the fact-gathering process, which, in light of Trader Joe's cooperation and production of necessary documentation and the test data obtained from NOAA, resulted in an efficient resolution without protracted litigation.  *Id.*

Specifically, on November 22, 2017, the Parties exchanged discovery requests.  *Id.* at ¶ 8.  Specifically, Plaintiff Reyes served interrogatories and requests for production on Trader Joe's.  *Id.*  That same day, Trader Joe's served requests for production on Plaintiff Reyes.  *Id.*

On December 22, 2017, the Parties served their written discovery responses.  *Id.* at ¶ 9.  Plaintiff Reyes made her first document production on January 2, 2018.  *Id.*  Trader Joe's made their first document production on January 19, 2018.  *Id.*  Trader Joe's made subsequent document productions on May 11, 2018 and May 21, 2018.  *Id.*

On March 1, 2018, Plaintiff Reyes served a subpoena on a third-party, Tri-Union Seafoods, LLC ("Tri-Union").  *Id.* at ¶ 10.  On April 13, 2018, Tri-Union made its first document production.  *Id.*  Tri-Union made a subsequent document production on April 20, 2018.  *Id.*

On May 14, 2018, Plaintiff Reyes served a notice of deposition pursuant to

1  Rule 30(b)(6) on Trader Joe's.  *Id.* at ¶ 11.  On May 16, 2018, Plaintiff Reyes served

2  an additional five deposition notices for various employees of Trader Joe's.  *Id.*

3        On July 9, 2018, following months of informal negotiations, the Parties

4  attended an in-person mediation, where they executed a binding Class Action

5  Settlement Term Sheet, subject to approval of the Court.  *Id.* at ¶ 12.

6  **III.**    **THE LEGAL STANDARD FOR PRELIMINARY APPROVAL**

7        Approval of class action settlements involves a two-step process.  First, the

8  Court must make a preliminary determination whether the proposed settlement

9  appears to be fair and is "within the range of possible approval."  *In re Syncor ERISA*

10  *Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F.

11  Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Alaniz v. California Processors, Inc.*, 73

12  F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S.

13  837 (1978).  If so, notice can be sent to Settlement Class Members and the Court can

14  schedule a final approval hearing where a more in-depth review of the settlement

15  terms will take place.  *See Manual for Complex Litigation, 3d Edition*, § 30.41 at 236-

16  38 (hereafter, the "Manual").

17        The purpose of preliminary approval is for the Court to determine whether the

18  parties should notify the putative class members of the proposed settlement and

19  proceed with a fairness hearing.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d

20  at 1079.  Notice of a settlement should be disseminated where "the proposed

21  settlement appears to be the product of serious, informed, non-collusive negotiations,

22  has no obvious deficiencies, does not improperly grant preferential treatment to class

23  representatives or segments of the class, and falls within the range of possible

24  approval."  *Id.* (*quoting* NEWBERG ON CLASS ACTIONS § 11.25 (1992)).  Preliminary

25  approval does not require an answer to the ultimate question of whether the proposed

26  settlement is fair and adequate, for that determination occurs only after notice of the

27

28

1  settlement has been given to the members of the settlement class.  *See Dunk v. Ford*

2  *Motor Company*, 48 Cal. App. 4th 1794, 1801 (1996).

3      Nevertheless, a review of the standards applied in determining whether a

4  settlement should be given *final* approval is helpful to the determination of

5  preliminary approval.  One such standard is the strong judicial policy of encouraging

6  compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at 1101 (citing

7  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), *cert. denied*,

8  459 U.S. 1217 (1983)).

9      While the district court has discretion regarding the approval of a proposed

10 settlement, it should give "proper deference to the private consensual decision of the

11 parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact,

12 when a settlement is negotiated at arm's-length by experienced counsel, there is a

13 presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d

14 373, 378 (9th Cir. 1995).  Ultimately, however, the Court's role is to ensure that the

15 settlement is fundamentally fair, reasonable, and adequate.  *See In re Syncor* 516 F.3d

16 at 1100.

17     Beyond the public policy favoring settlements, the principal consideration in

18 evaluating the fairness and adequacy of a proposed settlement is the likelihood of

19 recovery balanced against the benefits of settlement.  "[B]asic to this process in every

20 instance, of course, is the need to compare the terms of the compromise with the likely

21 rewards of litigation."  *Protective Committee for Independent Stockholders of TMT*

22 *Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  That said, "the court's

23 intrusion upon what is otherwise a private consensual agreement negotiated between

24 the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

25 judgment that the agreement is not the product of fraud or overreaching by, or

26 collusion between, the negotiating parties, and that the settlement, taken as a whole, is

27 fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.

28

In evaluating preliminarily the adequacy of a proposed settlement, particular attention should be paid to the process of settlement negotiations.  Here, the negotiations were conducted by experienced class action counsel.  Thus, counsel's assessment and judgment are entitled to a presumption of reasonableness, and the Court is entitled to rely heavily upon their opinion.  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

## IV.   THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS FOR THE PURPOSES OF PRELIMINARY APPROVAL

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  In assessing those class certification requirements, a court may properly consider that there will be no trial.  *Amchem,* 521 US at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

The Settlement Class consists of "All persons in the United States who purchased Trader Joe's Tuna (*i.e.*, 5 oz. Trader Joe's Albacore Tuna in Water Salt Added, 5 oz. Trader Joe's Albacore Tuna in Water Half Salt, 5 oz. Trader Joe's Albacore Tuna in Water No Salt Added, 5 oz. Trader Joe's Albacore Tuna in Olive Oil Salt Added, 5 oz. Trader Joe's Skipjack Tuna in Water With Sea Salt, and 5 oz. Trader Joe's Yellowfin Tuna in Olive Oil Solid Light) from January 5, 2012 through the date on which class notice is disseminated."[3]

---

[3] Excluded from this definition are (a) the Defendants and all of Defendants' past and present respective parents, subsidiaries, divisions, affiliates, persons and entities directly or indirectly under its or their control in the past or in the present; (b) Defendants' respective assignors, predecessors, successors, and assigns; (c) all past or present partners, shareholders, managers, members, directors, officers, employees, agents, attorneys, insurers, accountants, and representatives of any and all of the

1    This Court has not yet certified this case as a class action.  For the reasons

2    below, the Class meets the requirements of Rule 23(a) and (b).  For settlement

3    purposes only, the parties and their counsel request that this Court provisionally

4    certify the Settlement Class.[4]

5    ## A.    The Class Satisfies Rule 23(a)

6        In its April 1, 2019 Order, the Court already concluded, for settlement purposes,

7    that "[t]he proposed class meets all four Rule 23(a) factors."  4/1/19 Order at 6 (Dkt.

8    96).  Specifically, the Court found that:  (i) the Class "is sufficiently numerous"

9    because "the class size in this case is approximately 17,300 consumers," (ii) "the

10   claims of the potential class members demonstrate common questions of fact" in that

11   "the claims of Settlement Class Members are based on the same factual predicate as

12   Plaintiff's, namely that Defendants [allegedly] underfilled Trader joe's Tuna Products,

13   and Settlement Class Members purchased them," (iii) "Plaintiff … meets the typicality

14   requirement" because "Plaintiff's claims arise out of the same circumstances as those

15   of the other class members, namely that Plaintiff purchased Defendants' [allegedly]

16   underfilled Trader Joe's Tuna Products during the Settlement Class Period," and (iv)

17   "Plaintiff and her counsel satisfy the adequacy requirement for representing absent

18   class members" because "the named plaintiff and her counsel do not have conflicts of

19   interest with other class members and will vigorously prosecute the interests of the

20   class."  *Id.* at 6-7.  Here, the same reasoning applies today.  The Rule 23(a) factors are

21   plainly satisfied.

22   ## B.    The Class Satisfies Rule 23(b)(3)

23       In addition to meeting the prerequisites of Rule 23(a), Plaintiff must also meet

24   one of the three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v.*

25

26   foregoing; (d) Defendants' manufacturers, distributors, and suppliers of the Trader Joe's Tuna Products; and (e) all persons who file a timely Request for Exclusion from the Settlement Class.

27   [4] Defendants do not waive their rights to contest class certification at a later date in the event the Court denies the motion.

28

---

1    *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Under Rule 23(b),

2    a class action may be maintained if "the court finds that the questions of law or fact

3    common to the members of the class predominate over any questions affecting only

4    individual members, and that a class action is superior to other available methods for

5    fairly and efficiently adjudicating the controversy."  *See* Fed. R. Civ. P. 23(b)(3).

6    Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the

7    parties can be served best by settling their differences in a single action."  *Hanlon*, 150

8    F.3d at 1022.

9             *1.*    <u>*Common Questions Of Law And Fact Predominate*</u>

10        In its April 1, 2019 Order, the Court held that it "cannot find the predominance

11   requirement met" because "Plaintiff does not address the choice of law issue [by

12   conducting a choice of law analysis] <u>or provide support for the notion that the types of</u>

13   <u>concerns addressed in *Mazza* [*v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir.</u>

14   <u>2012)] present no roadblock to certification for class settlement purposes.</u>"  4/1/19

15   Order at 10 (underlining added).  Subsequent to the Court's opinion, the Ninth Circuit

16   decided *In re Hyundai and Kia Fuel Economy Litig.*, 2019 WL 2376831 (9th Cir. June

17   6, 2019), which makes clear that no such analysis is necessary in this matter.[5]

18        Previously, the *Mazza* decision held that courts must conduct a "three-step

19   government interest test" before certifying a nationwide class under California law.

20   4/1/19 Order at 9 (quoting *Mazza*, 666 F.3d at 590).  First, courts must determine

21   "whether the relevant law of each of the potentially affected jurisdictions" differs

22   materially.  *Id.*  Second, if there is a material difference, "the court examines each

23   jurisdictions' interest in the application of its own law under the circumstances of the

24   particular case to determine whether a true conflict exists."  *Id.*  Third, if there is a true

25   conflict, the court must compare each jurisdiction's interest in application of its own

26

27   [5] On April 22, 2019, the Court granted the Parties' stipulation to continue the deadline to file the Renewed Motion for Preliminary Approval pending the *In re Hyundai* decision, which would likely

28   "further clarify the applicability of *Mazza*."  *See* Dkts. 97, 98.

1   law "to determine which state's interest would be more impaired if its policy were

2   subordinated." *Id.*  Here, the Court noted that "Plaintiff fails to mention *Mazza*, let

3   alone conduct the required analysis, despite seeking to apply California consumer

4   protection laws to a nationwide class of purchasers."  4/1/19 Order at 9.

5        However, *Mazza* was abrogated – at least in the settlement context – by *In re*

6   *Hyundai*.  In *In re Hyundai*, which was decided *en banc*, the Ninth Circuit definitely

7   held that "[b]y default, California courts apply California law unless a party litigant

8   timely invokes the law of a foreign state, in which case it is the foreign law proponent

9   who must shoulder the burden of demonstrating that foreign law, rather than

10  California law, should apply to class claims."  *In re Hyundai*, 2019 WL 2376831, at

11  *9 (internal quotations omitted).  If this burden is not met by the proponent of foreign

12  law, then "the district court may properly find California law applicable without

13  proceeding" through a choice of law analysis, meaning that "a court adjudicating a

14  multistate class action is free to apply the substantive law of a single state to the entire

15  class." *Id.* (internal quotations omitted).

16       The *In re Hyundai* court began its analysis by noting the Ninth Circuit's "strong

17  judicial policy that favors settlements, particularly where complex class action[s] [are]

18  concerned."  *Id.* at *4 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015);

19  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 21101 (9th Cir. 2008)).  The Ninth Circuit

20  further noted that "[t]he criteria for class certification are applied differently in

21  litigation classes and settlement classes."  *Id.* at *5.

22       Given the "judicial policy" of "favor[ing] settlements," the Ninth Circuit

23  announced its "default" rule that the laws of a single state – here, California – may

24  ordinarily be applied nationwide in a settlement context without any choice of law

25  analysis:

26           [Objectors] Fetsch and Roland also argue that the district
             court failed to address variations in state law affecting
27           claims by used car purchasers and that it was required to do
28

so under *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). They are incorrect.

Subject to constitutional limitations and the forum state's choice-of-law rules, a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 823, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985); *see also Harmsen v. Smith*, 693 F.2d 932, 946–47 (9th Cir. 1982) (explaining that a district court sitting in diversity must "apply the substantive law of the state in which it sits, including choice-of-law rules"). Here, no party argued that California's choice-of-law rules should not apply to this class settlement arising from an MDL in a California court. By default, California courts apply California law "unless a party litigant timely invokes the law of a foreign state," in which case it is "the foreign law proponent" who must "shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims." *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1080-81 (2001) (quoting *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719, 721 (1976)); *accord Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010).

To meet their burden, the objectors must satisfy the three-step governmental interest test [as discussed above]. *Wash. Mut.*, 103 Cal.Rptr.2d 320, 15 P.3d at 1080-81. If the objectors fail to meet their burden at any step in the analysis, the district court "may properly find California law applicable without proceeding" to the rest of the analysis. *Pokorny*, 601 F.3d at 995 (quoting *Wash. Mut.*, 103 Cal.Rptr.2d 320, 15 P.3d at 1081). …

[Objectors] Fetsch and Roland do not suggest that application of California law gives rise to constitutional problems. And before the district court, no objector presented an adequate choice-of-law analysis or explained how, under the facts of this case, the governmental interest test's three elements were met. Further, no objector argued that differences between the consumer protection laws of all fifty states precluded certification of a settlement class.

Consequently, <u>neither the district court nor class counsel were obligated to address choice-of-law issues beyond those raised by the objectors, and we will not decertify a class action for lack of such analysis</u>.  *See Harmsen*, 693 F.2d at 947 (affirming district court's application of California law to multistate class where the proponent of foreign law "failed to show, as required by California law, that the law of other states relating to the [state law] claims is significantly different from California's and, more importantly, that the interests of other states would be impaired by application of California law to these nonresident plaintiffs"); *Pokorny*, 601 F.3d at 994–96 (affirming application of California law because the foreign law proponent failed to meet its burden under California's governmental interest test).

*Id.* at *9-10 (underlining added; some internal citations omitted; footnotes omitted).

Additionally, the Ninth Circuit specifically noted that *Mazza* was "readily distinguishable" and did not apply:

> <u>*Mazza* is readily distinguishable</u>.  There, the foreign law proponent (the defendant) "exhaustively detailed the ways in which California law differs from the laws of the 43 other jurisdictions" and showed how applying the facts to those disparate state laws made "a difference in this litigation." *Mazza*, 666 F.3d at 590–91.  …  Weighing these arguments and concessions, a divided panel concluded that the defendant had "met its burden" to show that foreign law applied "[u]nder the facts and circumstances of this case." *Id.* at 591, 594.

> Importantly, the *Mazza* class was certified for litigation purposes.  The prospect of having to apply the separate laws of dozens of jurisdictions presented a significant issue for trial manageability, weighing against a predominance finding.  *See also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001) (treating state law variations as a subspecies of trial manageability concerns).  In settlement cases, such as the one at hand, the district court need not consider trial manageability issues.  *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231.

1  *Id.* at *10 (underlining added; footnotes omitted).  Here, similarly, no choice of law

2  analysis is required, and *Mazza* is "readily distinguishable" in the settlement context.

3       The proposed Settlement Class is well-suited for certification under Rule

4  23(b)(3) because questions common to the Settlement Class Members predominate

5  over questions affecting only individual Settlement Class Members.  Predominance

6  exists "[w]hen common questions present a significant aspect of the case and they can

7  be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at

8  1022.  As the U.S. Supreme Court has explained, when addressing the propriety of

9  certification of a settlement class, courts take into account the fact that a trial will be

10  unnecessary and that manageability, therefore, is not an issue.  *Amchem*, 521 U.S. at

11  620.

12       In this case, common questions of law and fact exist and predominate over any

13  individual questions, including in addition to whether this Settlement is reasonable

14  (*see Hanlon*, 150 F.3d at 1026–27), *inter alia*:  (1) whether Defendants'

15  representations regarding the Trader Joe's Tuna Products were false and misleading or

16  reasonably likely to deceive consumers; (2) whether the Trader Joe's Tuna Products

17  were underfilled; (3) whether Defendants violated the CLRA, UCL, or FAL; (4)

18  whether Defendants breached an implied warranty; (5) whether Defendants had

19  defrauded Plaintiff and Settlement Class Members; (6) whether the Defendants were

20  unjustly enriched in regards to the products at issue; and (7) whether Plaintiff and the

21  Settlement Class have been injured by the wrongs complained of, and if so, whether

22  Plaintiff and the Settlement Class are entitled to damages, injunctive and/or other

23  equitable relief, including restitution or disgorgement, and if so, the nature and

24  amount of such relief.

25          2.    <u>A Class Action Is The Superior Mechanism For Adjudicating This</u>

26              <u>Dispute</u>

27       The class mechanism is superior to other available means for the fair and

28  efficient adjudication of the claims of the Settlement Class.  Each individual

1   Settlement Class Member may lack the resources to undergo the burden and expense

2   of individual prosecution of the complex and extensive litigation necessary to

3   establish Defendants' liability.  Individualized litigation increases the delay and

4   expense to all parties and multiplies the burden on the judicial system presented by the

5   complex legal and factual issues of this case.  Individualized litigation also presents a

6   potential for inconsistent or contradictory judgments.  In contrast, the class action

7   device presents far fewer management difficulties and provides the benefits of single

8   adjudication, economy of scale, and comprehensive supervision by a single court.

9          Moreover, since this action will now settle, the Court need not consider issues

10  of manageability relating to trial.  *See Amchem*, 521 U.S. at 620 ("Confronted with a

11  request for settlement-only class certification, a district court need not inquire whether

12  the case, if tried, would present intractable management problems, see Fed. Rule Civ.

13  Proc. 23(b)(3)(D), for the proposal is that there be no trial.").  Accordingly, common

14  questions predominate and a class action is the superior method of adjudicating this

15  controversy.

16  **V.     THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND**
       **REASONABLE**
17

18         Rule 23(e)(2) provides that "the court may approve [a proposed class action

19  settlement] only after a hearing and on finding that it is fair, reasonable, and

20  adequate."  When making this determination, the Ninth Circuit has instructed district

21  courts to balance several factors:  (1) the strength of the plaintiff's case; (2) the risk,

22  expense, complexity, and likely duration of further litigation; (3) the risk of

23  maintaining class action status throughout the trial; (4) the amount offered in

24  settlement; (5) the extent of discovery completed and the stage of the proceedings; and

25  (6) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026;[6] *Churchill

26  Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, the balance of

27  ───────────
    [6] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

28

1   these factors readily establishes that the proposed settlement should be preliminarily

2   approved.

3        **A.**    **Strength Of The Plaintiff's Case**

4        In determining the likelihood of a plaintiff's success on the merits of a class

5   action, "the district court's determination is nothing more than an amalgam of delicate

6   balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at

7   625 (internal quotations omitted).  The court may "presume that through negotiation,

8   the Parties, counsel, and mediator arrived at a reasonable range of settlement by

9   considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins.*

10  *Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West*

11  *Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

12       Here, Plaintiff's counsel engaged in lengthy arm's-length negotiations with

13  Trader Joe's counsel, and were thoroughly familiar with the applicable facts, legal

14  theories, and defenses.  Although Plaintiff and her counsel believe that Plaintiff's

15  claims have merit, they also recognize that they will face risks at class certification,

16  summary judgment, and trial.  Trader Joe's would no doubt present a vigorous defense

17  at trial, and there is no assurance that the class would prevail.  Thus, in the eyes of

18  Plaintiff's counsel, the proposed Settlement provides the Settlement Class with an

19  outstanding opportunity to obtain significant relief at this early stage in the litigation.

20  The Settlement Agreement also abrogates the risks that might prevent them from

21  obtaining relief.

22       **B.**    **Risk Of Continuing Litigation**

23       As referenced above, proceeding in this litigation in the absence of settlement

24  poses various risks such as failing to certify a class, having summary judgment

25  granted against Plaintiff, or losing at trial.  Such considerations have been found to

26  weigh heavily in favor of settlement.  *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v.*

27  *Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)

28

1   ("Settlement avoids the complexity, delay, risk and expense of continuing with the

2   litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff

3   class."). Even assuming that Plaintiff were to survive summary judgment, she would

4   face the risk of establishing liability at trial in light of conflicting expert testimony

5   between their own expert witnesses and Trader Joe's expert witnesses. In this "battle

6   of experts," it is virtually impossible to predict with any certainty which testimony

7   would be credited, and ultimately, which expert version would be accepted by the

8   jury. The experience of Plaintiff's counsel has taught them that these considerations

9   can make the ultimate outcome of a trial highly uncertain.

10       Moreover, even if Plaintiff were to prevail at trial, the class would face

11   additional risks if Trader Joe's appeals or moves for a new trial. For example, in *In re*

12   *Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991),

13   the jury rendered a verdict for plaintiffs after an extended trial. Based on the jury's

14   findings, recoverable damages would have exceeded $100 million. However, weeks

15   later, the trial judge overturned the verdict, entering judgment notwithstanding the

16   verdict for the individual defendants, and ordered a new trial with respect to the

17   corporate defendant. By settling, Plaintiff and the Settlement Class avoid these risks,

18   as well as the delays and risks of the appellate process.

19       **C.    Risk Of Maintaining Class Action Status**

20       In addition to the risks of continuing the litigation, Plaintiff would also face

21   risks in certifying a class and maintaining that class status through trial. Even

22   assuming that the Court were to grant a motion for class certification, the class could

23   still be decertified at any time. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at

24   *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class

25   at any time is one that weighs in favor of settlement.") (internal citations omitted).

26   From their prior experience, Plaintiff's counsel anticipates that Trader Joe's would

27   likely move for reconsideration, attempt to appeal the Court's decision pursuant to

28

1  Rule 23(f), and/or move for decertification at a later date.  Here, the Settlement

2  Agreement eliminates these risks by ensuring Settlement Class Members a recovery

3  that is "certain and immediate, eliminating the risk that class members would be left

4  without any recovery … at all."  *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS

5  29042, at *8 (N.D. Cal. Mar. 5, 2010).

6  **D.  The Extent Of Discovery And Status Of Proceedings**

7  Under this factor, courts evaluate whether class counsel had sufficient

8  information to make an informed decision about the merits of the case.  *See In re*

9  *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Here, this matter has

10  progressed through fact discovery more than sufficiently.  Accordingly, as discussed

11  above, Plaintiff's counsel has received, examined, and analyzed information,

12  documents, and materials that enabled them to assess the likelihood of success on the

13  merits.  These efforts include extensive consultations with experts from NOAA,

14  reviewing and analyzing test results regarding hundreds of tuna cans, numerous

15  interviews with members of the putative class, and significant legal research, analysis

16  of documents and evidence provided by Trader Joe's, and lengthy negotiations.

17  **E.  Experience And Views Of Counsel**

18  "The recommendations of plaintiffs' counsel should be given a presumption of

19  reasonableness."  *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D.

20  Cal. 2008).  Deference to Plaintiff's counsel's evaluation of the Settlement is

21  appropriate because "[p]arties represented by competent counsel are better positioned

22  than courts to produce a settlement that fairly reflects each party's expected outcome

23  in litigation."  *Rodriguez*, 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig.*, 47

24  F.3d 373, 378 (9th Cir. 1995)).

25  Here, the Settlement was negotiated by counsel with extensive experience in

26  consumer class action litigation, including extensive experience litigating consumer

27  claims regarding allegedly underfilled canned tuna.  *See* Fisher Decl. Ex. 4 (firm

28

resume of Bursor & Fisher, P.A.).  Based on their collective experience, Class Counsel concluded that the Settlement Agreement provides exceptional results for the Settlement Class while sparing Settlement Class Members from the uncertainties of continued and protracted litigation.

## VI.   THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE AND SHOULD BE APPROVED

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal."  Fed. R. Civ. P. 23(e)(1).

When a court is presented with a class-wide settlement prior to the certification stage, the class certification notice and notice of settlement may be combined in the same notice.  *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows the settlement class members to decide whether to opt out, participate in the class, or object to the settlement.  *Id.*

The requirements for the content of class notices for (b)(3) classes are specified in Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  Each of the proposed forms of notice, including the Long Form and Short Form notices, meet all of these requirements, as detailed in the following table:

| Requirement | Long Form, Fisher Decl. Ex. 6 | Short Form, Fisher Decl. Ex. 5 |
|---|---|---|
| "The nature of the action." Fed. R. Civ. P. 23(c)(2)(B)(i). | First introductory bullet; Q&A nos. 2 and 5. | Col. 1, ¶ 1. |
| "The definition of the class certified." Fed. R. Civ. P. 23(c)(2)(B)(ii). | Second introductory bullet; Q&A no. 4. | Col. 1, ¶ 2. |
| "The class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(2)(B)(iii). | First introductory bullet; Q&A nos. 2, 5 and 6. | Col. 1, ¶ 1. |
| "That a class member may enter an appearance through an attorney if the member so desires." Fed. R. Civ. P. 23(c)(2)(B)(iv). | Q&A nos. 16, 17, 18, and 19. | Col. 2, ¶ 3. |
| "That the court will exclude from the class any member who requests exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v). | Table of "Your Legal Rights and Options;" Q&A nos. 11, 12 and 13. | Col. 2, ¶ 2. |
| "The time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(vi). | Q&A no. 13. | Col. 2, ¶ 2. |
| "The binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(vii). | Table of "Your Legal Rights and Options"; Q&A nos. 11, 12, and 24. | Col. 1, ¶ 5. |

In addition to meeting the specific legal requirements of Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii), the proposed notices are based on the Federal Judicial Center's ("FJC") model forms for notice of pendency of a class action. FJC prepared these models at the request of the Subcommittee on Class Actions of the U.S. judicial branch's Advisory Committee on the Federal Rules of Civil Procedure. *See* www.fjc.gov. The FJC models are designed to illustrate how attorneys and judges might comply with Fed. R. Civ. P. 23(c)(2)(B)'s requirement that class action notices

"must concisely and clearly state in plain, easily understood language" specific information about the nature and terms of a class action and how it might affect potential class members' rights.  *See* www.fjc.gov.  FJC explained its methodology for preparing these models as follows:

> We began this project by studying empirical research and commentary on the plain language drafting of legal documents.  We then tested several notices from recently closed class actions by presenting them to nonlawyers, asking them to point out any unclear terms, and testing their comprehension of various subjects.  Through this process, we identified areas where reader comprehension was low.  We found, for example, that nonlawyers were often confused at the outset by use of the terms "class" and "class action."  Combining information from the pilot test with principles gleaned from psycholinguistic research, we drafted preliminary illustrative class action notices and forms.  We then asked a lawyer-linguist to evaluate them for readability and redrafted the notices in light of his suggestions.

*Id.*  FJC then tested the redrafted model notices "before focus groups composed of ordinary citizens from diverse backgrounds" and also through surveys "[u]sing objective comprehension measures."  *Id.*

Based on FJC's testing, the Plaintiff and Class Counsel believe that each of the proposed class notices, which are very closely based on FJC models, with the format and content adopted almost verbatim in most instances, are accurate, balanced, and comprehensible.

These notices will be disseminated through a media plan developed by Kurtzman Carson Consultants ("KCC"), a firm with experience administering more than 2,000 settlements, which has been chosen by the parties as the Settlement Administrator.  *See* Settlement Agreement ¶ 1.19, Fisher Decl. Ex. 1; Peak Decl. ¶ 3 ("Since 1984, KCC has administered more than 6,000 matters and distributed settlement payments totaling well over $20 billion in assets.").  KCC's proposed

1   notice plan includes creation of a dedicated settlement website, an Internet banner ad

2   campaign, and print publication in *National Geographic*, the *New York Times*, and the

3   *Los Angeles Daily News*, which will reach "approximately 70% of likely Class

4   Members." Peak Decl. ¶¶ 8-13. KCC advises that this notice plan is "consistent with

5   the 70-95% reach guideline set forth in the Federal Judicial Center's *Judges' Class*

6   *Action Notice and Claims Process Checklist and Plain Language Guide*, which

7   considers 70-95% reach among class members reasonable." *Id.* ¶ 14. KCC estimates

8   that its services in providing notice and claims administration will cost $357,953. *See*

9   Settlement Agreement ¶ 4.5, Fisher Decl., Ex. 1.

10      This proposed method of giving notice was developed by KCC, in collaboration

11   with Class Counsel, with the objective of ensuring that as much of the Settlement

12   Fund as possible will be distributed to Settlement Class Members in the most simple

13   and expedient manner. *See, e.g.*, William B. Rubenstein, Newberg on Class Actions §

14   12:35 (5th ed. 2014) ("[A] court's goal in distributing class action damages is to get as

15   much of the money to the class members in as simple a manner as possible."); *see also*

16   *id.* § 12:15 ("The goal of any distribution method is to get as much of the available

17   damages remedy to class members as possible and in as simple and expedient a

18   manner as possible."). With claim amounts at $29, it will take approximately 17,300

19   Cash Claims to exhaust the Cash Settlement Fund, and Class Counsel has asked KCC

20   to design the notice and claims process to accomplish this objective. Fisher Decl.

21   ¶ 13.

22   **VII.   CONCLUSION**

23      For the foregoing reasons, Plaintiff respectfully requests that the Court approve

24   the Settlement Agreement, provisionally certify the Settlement Class for the purposes

25   of preliminary approval, approve the proposed notice plan, and enter the [Proposed]

26   Order Granting Renewed Motion for Preliminary Approval of Class Action

27   Settlement, submitted herewith.

28

Dated:  July 23, 2019                     Respectfully submitted,

                                          **BURSOR & FISHER, P.A.**

                                          By:  _____/s/ L. Timothy Fisher_____
                                                     L. Timothy Fisher

                                           L. Timothy Fisher (State Bar No. 191626)
                                          1990 North California Boulevard, Suite 940
                                          Walnut Creek, CA  94596
                                          Telephone: (925) 300-4455
                                          Facsimile:  (925) 407-2700
                                          E-Mail: ltfisher@bursor.com

                                          **BURSOR & FISHER, P.A.**
                                          Scott A. Bursor (State Bar No. 276006)
                                          2665 S. Bayshore Dr., Suite 220
                                          Miami, FL  33133
                                          Telephone: (305) 330-5512
                                          Email:  scott@bursor.com

                                          *Interim Class Counsel*